(No. 11095.—Reversed and remanded.)

OSCAR H. WYLIE, Plaintiff in Error, vs. ALLEN S. BUSH-
NELL, et al. Defendants in Error.

*Opinion filed February 21, 1917—Rehearing denied April 10, 1917.*

1. EQUITY—*in chancery cases the Supreme Court is not bound
by the finding of facts of Appellate Court.* Under the present as
well as the former Practice act the Supreme Court is not bound
by the finding of facts of the Appellate Court in chancery cases.

2. SAME—*trustee must keep regular and accurate accounts, open
at all times for inspection.* It is the duty of a trustee to keep regu-
lar and accurate accounts during the whole course of his trustee-
ship, from which it can be ascertained what property has come into
his hands, what has passed out and what remains, including all re-
ceipts and disbursements in cash, and the sources from which they
came, to whom paid and for what purpose; and these accounts
should be open at all times to the inspection, on demand, of the
beneficiary.

3. SAME—*no special form is required for the trustee's book of
original entries.* No special form of keeping books is required of a
trustee, provided the accounts are in such form and so preserved
as to fairly show the true state of affairs between the parties, and
can, under the rules governing the making of such entries, be fairly
held to be original entries.

4. SAME—*vouchers are prima facie proof of disbursements in
matters of account.* In matters of account before the master
vouchers are *prima facie* proof of disbursements, and those who
signed the vouchers need not testify as to their genuineness unless
they appear on their face not to be genuine or their genuineness is
impeached.

5. SAME—*decree should not recite that no correct report can be
made in a matter of accounting without expenditure of much time
and labor.* In a chancery proceeding involving intricate matters of
account, where the master has not reported his conclusions on dis-
puted facts, it is not proper practice to insert in the decree a gen-
eral finding that no correct report could be made showing the re-
ceipts and disbursements without the expenditure of much time and
labor, and thereby put that burden on the reviewing court.

6. SAME—*trustee will not ordinarily be removed unless the trust
fund is in danger.* Mere disagreements between a testamentary
trustee and the beneficiaries will not justify his removal, nor will
he necessarily be removed for every mistake or neglect or inac-
curacy in keeping his accounts, but if there is such gross negligence

or mismanagement as evidences a want either of capacity or fidelity, putting the trust in jeopardy, a court of equity will interfere and decree his removal.

7. SAME—*what degree of care is required of trustees.* The care and prudence to be exercised by trustees is that which ordinary men would exercise in connection with their own affairs, and they are not chargeable for mere errors of judgment nor for accidental injuries and losses.

8. SAME—*in a proceeding to remove a trustee the burden is on the trustee to make a satisfactory accounting.* In a proceeding by cross-bill to remove a trustee the burden is upon him to make a satisfactory accounting of the moneys in his hands and to show that the accounts which he renders and his statements of receipts and disbursements are correct and just and were necessary, and to maintain the suit it is not necessary for the beneficiary to show affirmatively that there has been a failure to account for money belonging to him.

9. SAME—*duty of a trustee where he is both trustee and executor.* Where the same person is trustee and executor his duties in the two relations are practically separate and distinct, and he is not supposed to take the fund as trustee until it is separated from his funds held as executor, but when his duties as executor are completed and his duties as trustee begin it is his duty to hold the funds as trustee.

10. SAME—*when trustee's reports as executor are admissible in suit to remove the trustee.* In a suit in equity where a cross-bill is filed to remove a trustee who is also executor, his reports as executor, filed in the county court, are admissible to impeach his reports as trustee, which he has filed with the original bill for the approval of the chancellor.

11. SAME—*decree should not provide for future removal of a trustee who is not so unworthy that he must be removed at once.* Where the chancellor does not consider a trustee, who is also executor, so unworthy of trust that it is necessary to remove him at once and put the estate immediately into the hands of some other person, the decree should not provide that he be removed after settling his affairs as executor and after the approval of his report as trustee, but that question should be reserved for later determination.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Ford county; the Hon. T. M. HARRIS, Judge, presiding.

GREEN & PALMER, (HENRY I. GREEN, and ORIS BARTH, of counsel,) for plaintiff in error.

CLOUD & THOMPSON, and BEACH & TRAPP, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

Two bills were filed in the circuit court of Ford county which were afterwards consolidated on the hearing and heard as one case and have been since treated as one proceeding. The first bill was filed by plaintiff in error, Oscar H. Wylie, May 16, 1911, to obtain the direction and advice of said circuit court in the administration of the trust estate of Sherill P. Bushnell, deceased, and for the approval of his report as trustee of receipts and disbursements in said estate. The other bill was filed by defendant in error Allen S. Bushnell on July 28, 1911, asking for the removal of plaintiff in error as trustee on the grounds of incompetence, unfairness and mismanagement of the estate and failure to make proper reports as executor and trustee. When the two cases were consolidated it was ordered that the bill of Allen S. Bushnell should stand as a cross-bill to the bill filed by plaintiff in error. The whole matter was referred to a special master, who took and filed the evidence but without any conclusions of law or fact thereon. After a hearing the trial court dismissed the original bill for want of equity and entered a decree on the cross-bill finding the issues for defendant in error Bushnell and ordering the removal of Wylie as trustee after his reports as executor and trustee had been made and approved by the proper courts. This decree was affirmed by the Appellate Court on appeal. The case has been brought here by writ of *certiorari.*

Sherill P. Bushnell, a resident of Paxton, in Ford county, died in 1902, testate, leaving a widow, a son and daughter. He left quite a large amount of property, both real and personal, the bulk of the estate consisting of 640 acres of land in Iroquois county, Illinois, and 190 acres in

Ford county, there being considerable indebtedness. By his will, as modified by two codicils, he devised to his wife the homestead and certain other property for her life and devised and bequeathed the rest to plaintiff in error, Oscar H. Wylie, in trust, the net proceeds to be paid one-third to testator's widow, and one-sixth, each, to his son and daughter and the son's wife and the daughter's husband for their respective lives. The remainder, after the death of the various beneficiaries, was also disposed of, to the grandchildren or otherwise, in proportions and under conditions which are unnecessary for the purpose of this case to be set out. Wylie was not only named as trustee but as executor under said will. After the death of said deceased the will was filed for probate in the county court and plaintiff in error duly qualified as executor thereunder, and as executor and trustee proceeded with the management of said estate, renting the farms and collecting the rents, managing the properties and making disbursements, according to his testimony, in the manner required, in his judgment, under said will. After having acted in this capacity for some years there developed a dissatisfaction on the part of some of the legatees, especially Allen S. Bushnell, the son, as to the trustee not making formal reports in court, the objections, however, not being expressed, except perhaps in two or three instances, directly to the trustee. The evidence is voluminous, consisting, with the exhibits, of over 1600 typewritten pages. Many charges as to dereliction of duty are made against plaintiff in error, both as executor and trustee. We shall not attempt to set them out in detail. The following, however, are some of the principal objections urged against his actions as trustee or executor and found in general terms by the decree as reasons for removing him: (1) That the reports filed by him in the county court differed so widely from each other and from the report filed with his bill as to indicate his inability to state a correct account; (2) that he had never made an inventory of the funds that came into

his hands as trustee and had never filed in the county court any proper inventory as executor from which the amount which should be charged to him as trustee can be ascertained; (3) that he never kept any books of account as such trustee and had no memoranda from which a reliable report could be made showing the condition of his accounts; (4) that he never made any detailed statement in writing to the *cestuis que trust* of the receipts or disbursements as such trustee; (5) that as to three principal and specified transactions he had failed entirely to perform the duties required of him under the will; (6) that he never caused an appraisement to be made of the personal estate of the testator or paid all the debts of the estate or settled the estate in the county court, although it was his duty long since so to have done; (7) that by reason of his failure to discharge his duties as executor and trustee such ill-feeling existed between him and some of the *cestuis que trust* that he ought to be removed as trustee and executor.

Counsel for both sides apparently assume that in this case the judgment of the Appellate Court and the decree of the circuit court cannot be questioned by this court if there is any evidence in the record fairly sustaining said decree and judgment; that the judgment of the Appellate Court, under such circumstances; is binding and conclusive as to the facts. In this they are mistaken. This court has repeatedly held, under our present as well as the former Practice act, that it is not bound by the finding of facts of the Appellate Court in chancery cases. (*Nix* v. *Thackaberry*, 240 Ill. 352, and cited cases; *Fox* v. *Simons*, 251 id. 316.) This is a chancery case and falls within the rule laid down in those decisions.

One of the principal charges made against said trustee by counsel for defendants in error is that his reports were not filed in the county court as required by law, and that those reports, when made, were inconsistent and contradictory to the reports he made as trustee in the circuit court.

Counsel for plaintiff in error insist that the reports made in the county court were improperly received as evidence, over their objection, on the trial of the case. They admit that some items in the different reports appear somewhat contradictory, but claim that practically all the substantial differences are fully explained by plaintiff in error in his testimony, to the effect that at the time some of these reports were made he was in doubt as to whether he should report his accounts to the county court only as executor or both as executor and trustee. They claim that at the time of his appointment, in 1902, as executor, he understood the law then required him only to report to the county court his doings as executor; that the law was amended in 1905, attempting to authorize the county court to take jurisdiction over trustees' reports, but that this act was held unconstitutional in *Lynch* v. *Hutchinson,* 219 Ill. 193, and from the time of that decision, in 1905, until 1909, he understood that he was to report to the county court only his acts as executor and not include his acts as trustee; that in 1909 the legislature passed another act purporting to give the county court jurisdiction over trustees' reports, which latter act in 1911 was also held to be unconstitutional by this court. (*In re Estate of Mortenson,* 248 Ill. 520; *Frackelton* v. *Masters,* 249 id. 30.) Plaintiff in error insists that it was impossible for him to tell, in view of these acts and decisions of the court, in what capacity he should make his report to the county court, and that the differences in these reports all grew out of that fact. He further insists that until this dispute arose with some of the *cestuis que trust* as to his accounts as trustee he had no right to go into the circuit court and file a report and request the direction of that court as to what he should do, as this court has held that a trustee was not authorized to go into the circuit court to have his reports approved, even though such court has general jurisdiction over trusts and trustees, without some reasonable ground for so asking for the approval of the re-

port or the direction of the circuit court. (*Warner* v. *Mettler,* 260 Ill. 416.) Plaintiff in error further claims that as soon as reasonable necessity arose he sought the assistance and advice of a court of chancery in the original bill filed in this case.

We have examined the discrepancies between the reports of plaintiff in error in question in the light of his last report as trustee filed in the circuit court and his last report as executor filed in the county court, and think it is a fair deduction, considering all these reports together and the evidence in this record, that many of the discrepancies in the various reports can be and are reasonably explained because of the difficulties facing the plaintiff in error as to whether the reports to the county court should be only as executor or both as executor and trustee. Indeed, counsel on both sides concede that under the provisions of the will here in question it is difficult to separate clearly the actions that the executor must take as executor from those he must take as trustee. Neither counsel have attempted to make any clear statement in their briefs as to how the acts of plaintiff in error as executor in carrying out the provisions of the will could be clearly and definitely distinguished from his acts as trustee, neither does the decree of the trial court clearly make, or even attempt to make, such a distinction. Counsel for defendants in error, in our judgment, take inconsistent positions in their briefs on this question. They argue with great earnestness and at length that plaintiff in error was grievously at fault in not making proper reports as executor separate from his reports as trustee, and yet they also argue that he was derelict as trustee in not paying all just and legal claims against the estate. It seems to us if there is anything clear from this record it is that he should pay the claims rightly filed against the estate as ex-. ecutor and not as trustee.

Counsel for defendants in error argue that plaintiff in error never filed any inventory. They also, in other places,

claim that he never filed any proper inventory as trustee.
Plaintiff in error himself testified positively that he filed an
inventory as executor not long after he qualified, although
he admits he has not been able to find it on file in the county
court. It is apparent from the testimony of defendant in
error Allen S. Bushnell that he understood that such an in-
ventory had been prepared by plaintiff in error from the list
of the property that the widow of deceased helped to make
up. It is suggested that the inventories and reports filed
later in the county court were only filed after several orders
by that court that they be filed, and that plaintiff in error
had rendered himself liable for punishment for contempt by
failing to promptly comply with the orders in that regard.
The testimony of the county judge who made some of these
orders does not indicate that he thought plaintiff in error
liable for punishment for contempt for failure to comply
with such orders, or even that he thought plaintiff in er-
ror was subject to serious criticism for so failing.

The decree finds that plaintiff in error has never kept
proper books of account showing his receipts and disburse-
ments as trustee. Counsel for plaintiff in error insist that
it was not necessary for him to keep bound books; that the
system adopted by him for keeping his accounts satisfied the
requirements of the law. Of course, there can be no ques-
tion as to the duty of a trustee to keep regular and accurate
accounts during the whole course of his trusteeship, from
which it can be ascertained what property has come into
his hands, what has passed out and what remains therein,
including all receipts and disbursements in cash, and the
sources from which they came, to whom paid and for what
purpose paid. (*Warner* v. *Mettler, supra; Lehman* v.
*Rothbarth,* 159 Ill. 270; 3 Pomeroy's Eq. Jur.—3d ed.—
sec. 1063; 2 Perry on Trusts,—6th ed.—sec. 821; 2 Beach
on Trusts and Trustees, sec. 682.) And these same authori-
ties hold that these accounts should be open at all times to
the inspection, on demand, of the beneficiary. No special

form, however, of keeping books is required. The question of their competency and sufficiency must be determined by the appearance and character of the accounts, regard being had to the character of the work and the qualifications ordinarily required in keeping books of account as to such business. Separate scraps of paper have been admitted in evidence as books when sworn to as such. A notched stick has been held to be admissible as a book of original entries where the accuracy of the entries was satisfactorily tested by a comparison with an account made out from notched sticks some time previous. Sheets from a loose-leaf ledger system of accounts containing the original entries are, when properly identified, admissible in evidence. (10 R. C. L. 1178; *Reyburn* v. *Queen City Savings Bank and Trust Co.* 171 Fed. Rep. 609; *Bell* v. *McLeran,* 3 Vt. 185; *Presley Co.* v. *Illinois Central Railroad Co.* 120 Minn. 295; *Packing Co.* v. *Storage Co.* 41 Utah, 92; *Ricker* v. *Davis,* 160 Iowa, 37.) The material, form or construction of the book offered in evidence as a book of original entries is unimportant. (9 Am. & Eng. Ency. of Law,—2d ed.—sec. 917; *State* v. *Stephenson,* 2 Ann. Cas. (Kan.) 841, and cases cited in note.) The manner of keeping the accounts is the important consideration. If they are in such form and so preserved as to fairly show the true state of the accounts between the parties, and can, under the rules governing the making of such entries, be fairly held to be original entries, that is all that is required. To hold that they must be in bound book form in all cases is giving more importance to form than to substance. The vital question in such cases is whether the entries offered are the original charges, are true and have been made at or about the time of the transaction. (*Graham* v. *Work,* 141 N. W. Rep. (Iowa,) 428; *United Grocery Co.* v. *Dannelly,* Ann. Cas. 1914*d* (S. C.) 489, and cases cited in note.) Books consisting of entries for the time of workmen are admissible in evidence though the entries were made from time-slips made out by the workmen

and approved by the foreman. (*Chisholm* v. *Beman Machine Co.* 160 Ill. 101.) "Stack sheets" which recorded the number of tons of straw in stacks, made out from scale tickets, are admissible as original entries. *Chicago and Alton Railroad Co.* v. *American Strawboard Co.* 190 Ill. 268.

The testimony of plaintiff in error as to his method of keeping accounts was, substantially, that he had a system of keeping folders or large envelopes about twenty-four inches long by eighteen or twenty inches wide, and in them he inserted and kept all the papers as they came into his possession, each year's business separate and kept in a separate folder; that from time to time he made distributions, and in making computations for these distributions he consulted these folders and exhibits and memoranda and papers, in connection with his bank book; that there were no transactions performed by him as trustee or executor for which he did not have vouchers or receipts; that while he had kept a system of accounts in a bound book since the filing of the original bill in this case he had not done so before, as he considered his system of keeping his accounts in a separate folder for each year's transactions was fully as accurate, in connection with his bank pass-book, in which he made all deposits of money that he received as trustee or as executor; that he considered, before he began the plan of keeping his accounts in a bound book, that he had a system of keeping accounts in these folders in which all the original receipts, vouchers, correspondence and everything relating to the transaction of the business of that year were kept. It is somewhat difficult for this court to ascertain whether this system of keeping his accounts in these folders was sufficient to show an accurate and intelligent system of accounting for all his transactions as trustee, as none of the original receipts, checks or other memoranda contained in these folders are found in the record. Copies of these various receipts and checks as to disbursements made by the trustee are part of the record.

At the master's hearing plaintiff in error offered in evidence a series of exhibits concerning various items, first of receipts and second of expenditures, which were set forth in the report attached to the bill. Counsel for the trustee stated that these vouchers and documents were offered in explanation of the various items and receipts in the report and in support of the statements found in such report; that they were so numerous that if it could be agreed upon they would be left with the master as exhibits to be examined by him; that each six months' transactions were placed in a separate envelope and offered in that condition to the master; that these vouchers, receipts and statements were taken from the folders in which he had kept account of the business in this estate from year to year; that in addition to that he had a large volume of correspondence, computations and memoranda and other data in these folders which were still there; that the vouchers were true and correct. Counsel for defendants in error objected before the master to the admission of any of these items in evidence, and to any of the vouchers or instruments, without laying full foundation showing their correctness and genuineness and their relevancy to the issue. No ruling was made by the master on this objection. The order of reference provided that he should report the evidence without reporting his conclusions thereon, and we understand that the rules of that judicial circuit do not give the master the power to rule on the admission of evidence. Usually a master is governed by the ordinary rules of evidence by which a court would be governed, and he should hear and exclude evidence as if the hearing were before the court. (17 Ency. of Pl. & Pr. 1023.) But if it is not entirely clear that the evidence is incompetent the master should permit the testimony taken down subject to objection, so that it may be afterwards considered without a re-reference if the master's rulings as to such evidence should be held to be incorrect. The holdings of this court as to the master's authority as to ruling on

the admission and exclusion of evidence have been collected and fully discussed, with other authorities, in *Ellwood* v. *Walter,* 103 Ill. App. 219, and we do not deem it necessary to re-state them here. The party may produce the vouchers in support of payments and the master is bound to admit them in evidence, but the other side can lay a reasonable ground to show that the vouchers in question can be impeached. The vouchers are *prima facie* proof of disbursements. (*Birkholm* v. *Wardell,* 42 N. J. Eq. 337; *Halstead* v. *Tyng,* 29 id. 86; 1 Ency. of Evidence, 145. See, also, 39 Cyc. 489, 499.) It is well known that the practice in probate courts as to reports of administrators and executors in this State requires the presentation of proper vouchers showing disbursements. If they appear genuine on their face they are accepted by the court as sufficient unless some specific objection is raised to particular vouchers, and then it rests in the sound discretion of the court as to whether further proof shall be required. Plaintiff in error testified before the master during the hearing that the vouchers were true and correct and that he received the vouchers and statements during the progress of business and examined and checked them with reference to their accuracy. To require the plaintiff in error, when he made this offer, to bring the persons who signed the vouchers to testify to their genuineness, without some proof or something appearing on their face to indicate their lack of genuineness, would be most unreasonable. Such a rule in this case would have consumed a great amount of time in the taking of the testimony, to require which, so far as this record discloses, would be entirely unnecessary. It seems evident, and we have examined a great number of the copies in the record, that on their face the vouchers and checks are genuine. Plaintiff in error himself testified they were genuine, and there is no evidence in the record to contradict his testimony.

The decree finds that many of the original memoranda, receipts and disbursements were lost or mislaid by the trus-

tee and their places supplied by purported duplicates thereof.  We find no evidence to support this finding of the decree.  Plaintiff in error testified to the contrary and we find nothing in the record contradicting him, and no such evidence was pointed out in the brief of counsel for defendants in error.  Plaintiff in error did testify that he had certain vouchers made several years after the transactions in some cases, but he testified they were genuine, and we find no evidence, and none has been called to our attention, that indicates that they were not genuine.  It is true that counsel for defendants in error insist that some of these vouchers or memoranda show by the printed heading on the paper that they must have been made out several years after the transaction, but that fact would not indicate that the vouchers were fraudulent or that they failed to set forth the true facts as to the transactions to which they pertained.

If it be assumed for the purposes of this case that the general objection of counsel for defendants in error before the master was sufficient to justify the refusal to receive these vouchers and other original memoranda in evidence without further proof of their genuineness, ought the plaintiff in error to be removed because of the failure of his counsel to make such proof in that regard?  Certainly a mistake in judgment as to the proper rule of law on this question by plaintiff in error's counsel, assuming one had been made, would not justify the trustee's removal.  The question at issue was whether the vouchers and memoranda showed a proper system of keeping his trustee's accounts.

The decree found that from the memoranda and data kept by the trustee no statements of his receipts and disbursements could be made without the expenditure of much time and labor.  Counsel for plaintiff in error insist that his final report as trustee as filed in connection with this bill, taken in connection with his receipts and vouchers and other original memoranda kept in these folders, shows clearly all his receipts and disbursements and all the transactions that

he had made as trustee, and plaintiff in error so testified. There is no evidence in the record contradicting this testimony, unless we consider the reports made by him at various times in the county court as to his transactions as executor or trustee, and, so far as we càn find from an examination of this record, the explanation of plaintiff in error as to most of the conflicting statements in these reports seems reasonable.

The master in chancery himself, as already stated, was not required by the order of the court to make a report of his conclusions of law or fact but only to report the evidence. The findings of the decree of the circuit court, except in a very few particulars which we will discuss later in this opinion, are of the most general nature, without any specific facts being set out to sustain such findings. It would seem that this was peculiarly a case where a master experienced in such work would be especially qualified to make an intelligent accounting ·and in an orderly manner report his conclusions of fact, at least showing wherein, if in any respect, the reports of the plaintiff in error were incorrect, (unless the trial court thought it the better practice, in the particular case, to have a full hearing before himself,) and make such a specific finding and report as would justify the removal of the trustee. We do not consider it the proper practice, when there has been no report of the master as to his conclusions on disputed facts, to find in general terms in the decree, as found here, that no correct report could be made showing the receipts and disbursements "without the expenditure of much time and labor." Certainly that labor should be performed by the trial court in some manner or under its direction rather than to ask a court of review to make such an accounting, especially when, in the particular instances pointed out in the decree in which the plaintiff in error is claimed to have been derelict in his duty, the charges are unfounded, as we think is shown by the evidence in this case.

277 — 32

The argument is further made that plaintiff in error failed to furnish proper statements and report in the proper manner to beneficiaries under the will. The beneficiaries were the testator's widow, Adeline Bushnell, his son, Allen S. Bushnell, his daughter-in-law, Caroline Bushnell, (who was said son's wife,) testator's daughter, Emily Wylie, and his son-in-law, Samuel M. Wylie, (who was said daughter's husband,) and the grandchildren. All the grandchildren were the children of Allen S. Bushnell, Emily Wylie having no children at the time of this hearing. The son-in-law, Samuel M. Wylie, a practicing physician, was plaintiff in error's brother. Allen S. Bushnell some time before the beginning of this litigation, in 1911, retired from active business, and he and his family were supported largely on the moneys received as legatees under said will. No dispute appears to have arisen between plaintiff in error and the Bushnells until some time in 1910. We think the evidence tends strongly to show that all the information any of the Bushnells desired as to the condition of their account and the situation of the estate was given in a satisfactory manner by plaintiff in error before these disputes arose between them. Dr. Wylie and his wife have never joined with Allen S. Bushnell and his family in their charges of dereliction of duty against plaintiff in error. On the contrary, the doctor and his wife have always contended that plaintiff in error was conducting the affairs of the estate as they should be conducted, and much discussion took place between Dr. Wylie and Allen S. Bushnell since 1910 as to the conduct of the estate and the reports. The wife of the testator appears to have been fully satisfied with the plaintiff in error's management of the estate up to the time of her death, in December, 1910. Since the dispute arose plaintiff in error has made several reports in the county court and two reports to the circuit court in connection with this litigation. While we do not think that the reports of plaintiff in error to the county court were made as promptly or arranged in such shape as they should have been, still under

the conditions of this record we are not now prepared to
say that because of any dereliction of duty in this regard,
in view of the attitude for years of Allen S. Bushnell and
his wife in reference to these reports, the plaintiff in error
should be removed from his trusteeship.

One of the specific charges in the decree is that a rent
payment, amounting to $240, from one of the tenants,
F. Slusher, for 1905, was unaccounted for and should be
charged to plaintiff in error. We do not think the evidence
in the record sustains this finding. The evidence tends to
show, according to the reports and testimony of plaintiff in
error, that it was and is accounted for in his report. Plain-
tiff in error gave some testimony on cross-examination as to
this Slusher rent which would indicate that possibly that
year's rent had not been paid; that he was in poor health
at the time it should have been paid and in the south on a
vacation. It is very clear from his reports that he charged
it to himself as having been collected.

The decree of the circuit court makes a definite finding
as to a specific item charging that plaintiff in error was
derelict in his duty with reference to a mortgage securing a
note for $1250. The note and mortgage were signed by
Caroline Bushnell and her husband, Allen S. Bushnell, pay-
able to S. T. Weir, and by the latter assigned to the testator,
Sherill P. Bushnell, in his lifetime, the mortgage covering
the homestead of Allen S. Bushnell and wife. After the
death of her father-in-law Caroline Bushnell desired either
to sell or mortgage the premises and asked plaintiff in er-
ror to release the $1250 mortgage of record. This he con-
sented to do in 1905, after an agreement amounting to a
release was signed by Allen S. Bushnell and his wife, Dr.
Wylie and his wife and Adeline Bushnell, the widow of the
testator, in which it is stated, among other things, that they
requested plaintiff in error to release said mortgage of rec-
ord and cancel said indebtedness due said estate as an asset
for the purpose of enabling Caroline Bushnell and her hus-
band to make a new loan on their home property. This

$1250 mortgage was charged in the report of plaintiff in error against the distributive share of Caroline Bushnell but was never deducted from the distributions that went to her. In his report to the circuit court plaintiff in error said it was a matter of indifference to him whether it was charged to her or not; that what he wanted was the direction of the court as to his duty in that regard. Allen S. Bushnell in his cross-bill claimed that this amount was charged up to the distributive share of his wife for the purpose of harassing and oppressing her. The trial court held that the amount was properly charged to Caroline Bushnell, but, notwithstanding the fact that the mortgage was released under the signed consent of the chief beneficiaries, held it was improperly released, and therefore an act of sufficient importance to require a specific finding as one of the acts calling for plaintiff in error's removal as trustee. It seems to be claimed that the release of this mortgage was a fraud upon the residuary legatees,—that is, the grandchildren of the deceased; yet Allen S. Bushnell claimed in his cross-bill that it was charged to his wife for the purpose of harassing and oppressing her. It is manifest that this release of the mortgage was made without any wrongful intention on the part of plaintiff in error and that he properly charged the amount of the debt secured by the mortgage to the distributive share of Caroline Bushnell; that there is no evidence in the record tending to show that anyone was injured or harmed by his acts with reference to this mortgage or that the estate would lose anything thereby. While, perhaps, he made a mistake in judgment in releasing the mortgage at the time he did without the direction of a court with proper authority for acting thereon, before the grandchildren became of age and their consent was obtained, we cannot, under the circumstances already set forth, see why he should be charged with such improper actions in connection with the release of said mortgage as to justify his removal.

The third definite charge in the decree as to a specific item concerning which plaintiff in error had been derelict is in regard to his taking commissions for caring for the trustee's estate. The will provided that the trustee should be allowed a reasonable compensation, not to exceed six per cent of the gross annual income. The evidence in the record tends to show that on January 1, 1910, he had received as trustee $35,289.74 and expended $38,151.83; that his executor's report containing his receipts and disbursements up to that time showed he had received as executor $15,384.02 and expended $14,084.74; that he had paid out in excess of the receipts in what he considered the trustee's account, over $2000 more than he had received, advanced out of his own money. His reports show that he had credited himself as trustee with commissions in six different items, down to the year 1906, amounting to $1342.99. He asked in the trustee's report of 1910 to be allowed $774.39 as further commissions. The decree finds that he had actually received and taken $2117.38, and that he should pay back to the estate out of this amount $1058.69. As a matter of fact, as shown by this report if correct on these questions,—and we find nothing in the record contradicting it,—he had received no benefit from the $1342.99 that he had charged himself with taking and had advanced something more than this to the beneficiaries. Quite a large portion of these receipts as trustee he had paid out to defendants in error at their own earnest solicitation, advancing, as has been stated, money out of his own pocket. Necessarily, the decree of the court was in error in requiring that he turn back as trustee $1058.69 to the estate. Technically, according to his own account, if the trial court thought that $1058.69 (the half of the commissions that he claimed) was all that he was entitled to, the decree could have properly found that he be allowed that amount, and in making out the proper reports as trustee charge the difference between $1058.69 and $1342.99 to himself as trus-

tee and credit the estate with the same amount, but we see no just ground for the decree making the order it did in regard to commissions. What commissions plaintiff in error should be entitled to we do not consider or decide on this hearing. After his reports as executor and trustee have been approved by the proper tribunals,—the county and circuit courts, respectively,—those courts, and this court if the matter should be brought here, will be much better situated to decide as to the proper amount for trustee's or executor's fees.

While the three items above referred to are the only specific ones pointed out in the decree in which it is charged that plaintiff in error was guilty of negligence, numerous other particular transactions are charged in the defendants in error's brief to have been improperly managed or improperly stated in plaintiff in error's reports. The most important one, perhaps, is the charge that plaintiff in error improperly handled the claim of $4500 of Helen McEwen, a niece of the testator. She filed her claim for probate against the estate for that amount. On July 2, 1902, the executor paid her $2500 on the claim, leaving due on November 28, 1902, a balance of $2001.50. On the date last mentioned he informed her, as we understand the record, that he was ready to pay this balance in full, and the money was deposited in the bank to be used for that purpose. She did not wish the money paid to her at that time, and an arrangement was made by Dr. Wylie to borrow $2500 of this money from Helen McEwen personally, and the trustee at her request kept the balance to his credit in the bank. Not long after that, Mr. and Mrs. Bushnell were anxious to have further distributive shares paid to them from the income of the estate, and after considerable discussion, and after being urged by Allen S. Bushnell to do so and without objection by any of the beneficiaries, the executor re-assumed the claim in favor of Helen McEwen to the amount to his credit in the bank as one of the debts against the es-

tate for the estate to pay interest on, and he paid the money back into the estate and distributed that amount to the legatees. We find no basis in the record for the charge of counsel that plaintiff in error did not hesitate to devote these trust funds from the McEwen loan to his own use or for claiming that he profited by the estate taking back and re-assuming this debt. Helen McEwen is not finding any fault with the transaction and the estate has not lost in any way by his acts with reference to this loan. While it may have been unwise for him to re-assume for the estate the obligation of this debt and pay out the money thus obtained on the distributive shares, he was, beyond question, induced to do so by defendants in error, whose counsel are now criticising him for so doing. Somewhat the same situation arises with reference to the Mary McCann claim against the estate. This was allowed to run because defendants in error particularly desired to have the income that would otherwise go to pay this claim, paid to them in distributive shares.

We will not attempt to discuss all the various items in the reports criticised by counsel for defendants in error. We have examined most, if not all, of them in detail, and so far as we are able to ascertain, the great majority of them are fairly explained in the reports of plaintiff in error, taken in connection with his testimony. We will, however, refer to one other item.

On page 34 of defendants in error's brief counsel state: "In his last report Oscar Wylie charges Emily J. Wylie with $150 paid to her October 22, 1909. (Abs. 34.) But in reports Exhibits 6 and 7 he shows that he in fact paid her $200 on October 22, 1909. (Abs. 304 and 321.)" An examination of these pages of the abstract, in connection with the other testimony on this point in the record, shows that Emily J. Wylie on October 22, 1909, was paid by plaintiff in error $150 on her distributive share. In the same report, on the same page, appears the further entry

that under date of August 14 plaintiff in error paid Emily J. Wylie on her distributive share $50. Abstract page 514 shows a check to Emily J. Wylie dated October 22, 1909, for $150, followed by her receipt for $200 of the same date, and on page 516 of the abstract there appears a check to Emily J. Wylie for $50 under date of August 14, 1909, all as shown in the report. Taking all the entries together, there is no inconsistency in any of them as to the payment of this $200, and anything like a careful examination of the reports would show to anyone familiar with them that there is no inconsistency as to this item.

It would serve no useful purpose to attempt to take up in detail in this opinion all of the many items in the reports that are criticised by counsel for defendants in error. Opposing counsel differ materially as to the deductions to be drawn from some of these items, but it is absolutely impossible to decide with certainty, not having the original vouchers before us, just what the situation in the record is in regard to certain of those items. The master himself, as already stated, made no finding, and we have discussed particularly the only items with reference to the transactions of the plaintiff in error that are referred to specifically in the decree of the trial court.

Counsel for defendants in error criticise plaintiff in error because of his acts with reference to the appraisement of the personal property. As far as we can ascertain from this record,—and nothing is pointed out to the contrary by counsel for defendants in error,—all the personal property of the estate subject to appraisement consisted of household goods and a horse and buggy, which under the terms of the will went to the widow for her use during her life. We think it is apparent from the record that the failure to appraise these originally was due to the objection of the widow to having such appraisement made. It is also evident from the testimony of Allen S. Bushnell that his mother gave a receipt to the plaintiff in error for the household goods

after the father's death. Any criticism of plaintiff in error's actions with reference to the appraisement of this small amount of chattel property, or argument that his acts with reference thereto offer any justification for his removal as trustee, seems to us hypercritical.

Counsel for defendants in error further insist that the decree of the court was justified because of the ill-feeling existing between plaintiff in error and some of the defendants in error. "Mere disagreements between the trustee and *cestui que trust* will not justify a removal, nor the fact that the trustee forbids social intercourse between his family and the beneficiaries." (1 Perry on Trusts,—6th ed.— sec. 276. See, also, *Anderson* v. *Kemper*, 76 S. W. Rep. 122; *Polk* v. *Linthicum*, 60 Atl. Rep. (Md.) 455; *In re Neafe's Estate*, 199 Pa. St. 307; 28 Am. & Eng. Ency. of Law,—2d ed.—980.) "The power of removal of trustees appointed by deed or will ought to be exercised sparingly by the courts. There must be a clear necessity for interference to save the trust property. Mere error, or even breach of trust, may not be sufficient. There must be such misconduct as to show want of capacity or of fidelity putting the trust in jeopardy." (1 Perry on Trusts,—6th ed.— sec. 276.) This court has held that it will not remove a trustee appointed by the testator himself even though the court might in the first instance not have appointed that person. (*Lorenz* v. *Weller*, 267 Ill. 230.) The care and prudence to be exercised by trustees is that which ordinary men would exercise under like circumstances in connection with their own affairs. If a trustee "has exercised the care and judgment of ordinarily prudent men in their own affairs he will not be chargeable for mere errors of judgment nor for accidental injuries and losses." (3 Pomeroy's Eq. Jur.—3d ed.—sec. 1070.) It is not every mistake or neglect or inaccuracy in the conduct of trustees which will induce courts of equity to remove them. "The acts or omissions must be such as to endanger the trust property or to

show a want of honesty or a want of proper capacity to execute the duties or a want of reasonable fidelity." (2 Story's Eq. Jur.—13th ed.—sec. 1289.) This doctrine from both authorities last cited was quoted with approval by this court in *Waterman* v. *Alden,* 144 Ill. 90, the court saying in that case that what the court sought in every case was what was for the best interests of the estate and all parties interested therein. The principle underlying all decisions as to the removal of trustees is, that it is only done for acts or circumstances endangering the trust fund. (28 Am. & Eng. Ency. of Law,—2d ed.—979.) Generally speaking, it is only in case of a real or threatened diversion of the trust funds or property, or of mismanagement, incompetence or dishonesty, that a court may interfere to remove the regularly appointed trustee. (*Wisconsin Universalist Convention* v. *Unitarian and Universalist Society,* 152 Wis. 147.) The court will not always remove a trustee for error or misjudgment in some special transaction. There must be such gross negligence or mismanagement as to evidence a want either of capacity or fidelity putting the trust in jeopardy. (*Massey* v. *Stout,* 3 Del. Ch. 274.) The question whether trustees appointed by a will or deed will be removed for neglect of duty or breach of trust must necessarily be addressed to the sound discretion of the court, whose determination must depend largely upon the circumstances of each particular case. If the trustee has acted honestly and in good faith, though the keeping of his books is decidedly unbusinesslike and careless, it does not necessarily require his removal. *Murdock* v. *Elliott,* 77 Conn. 247.

We do not agree with counsel for plaintiff in error that the burden necessarily rested upon defendants in error to establish, by a preponderance of the evidence, all the allegations of the cross-bill that plaintiff in error had failed to account for all moneys received by him as trustee. The burden is on the trustee to make a satisfactory and proper accounting of the moneys in his hands, and to maintain a

suit against him it is not necessary to show affirmatively that there has been a failure to account for money belonging to his beneficiary. The general rule is, that the trustee has the burden of showing that the accounts which he renders and his statements of receipts and disbursements are correct and just and were necessary. No hardship is imposed upon him in requiring that he make such a showing rather than to cast the burden upon the *cestui que trust.* (*Lehman* v. *Rothbarth, supra;* 30 Cyc. 500; *Marvin* v. *Brooks,* 94 N. Y. 71.) This rule, however, conflicts in no way with the rule heretofore laid down that the vouchers offered with his report are *prima facie* proof of his disbursements.

"If a testator in his will appoint his executor to be a trustee it is as if different persons had been appointed to each office. A court of equity cannot remove him from the executorship, for courts of probate have exclusive jurisdiction over the appointment and removal of administrators and executors, but if the office of trustee is separate from and independent of the office of executor a court of equity may remove him from the office of trustee and leave him to act as executor, or if he has completed his duties as executor and is holding and administering the estate simply as trustee a court of equity may remove him." (1 Perry on Trusts,—6th ed.—sec. 281, and cases cited.) Where the same person is trustee and executor his duties in the two relations are practically separate and distinct. He is not supposed to take the fund as trustee until it is separated from his funds held as executor, but where his duties as executor are completed and his duties as trustee begin it is his duty to hold the funds as trustee. (*Fenton* v. *Hall,* 235 Ill. 552.) In a case where the powers and duties of the trustee and executor are so intermingled that removal as trustee would be ineffective if he were allowed to continue as executor, it has been held that a court of equity may restrain him from continuing to act as trustee although

this necessarily would restrain him from acting as executor. (*Bentley* v. *Dixon,* 60 N. J. Eq. 353.) The difficulty arising from the same party holding both of these positions is avoided in many States by the probate courts being authorized to have general power to remove trustees as well as executors.

It seems quite clear, under the above authorities, that if the will of the testator be fairly construed, plaintiff in error as executor should have paid all the debts promptly, as conveniently as could be done without sacrificing any portion of the estate, using for that purpose the personal property of the estate available for the payment of claims, and if that was not sufficient, using the necessary amount of the income belonging to the trust estate, which he as trustee would be justified in transferring to himself as executor to prevent a sale of the real estate to pay debts, if it be considered that he did not take this income directly as executor, to the amount so necessary. As·soon as the debts were all paid he should have closed his account with the county court as executor, turning over to himself, as trustee, any proceeds that remained after the approval of his final report by that court. He at least made a mistake in judgment in not following this plan in caring for and managing this estate. He should now proceed promptly to settle up along these lines all claims against the estate and to turn over to himself as trustee, after the approval of his final report as executor, any funds that he may have left in his hands as such executor. We think it was competent on the hearing before the trial court to admit in evidence his reports as executor filed in the county court if they tended to contradict or impeach in any way his reports as trustee filed with the original bill in this case for the approval of the chancellor. These reports as executor were not competent for the purpose of requiring that they be approved by the circuit court, (the circuit court is not required to approve such reports,) but they were admissible for the purpose of

requiring the plaintiff in error to explain, if possible, as to the contradictions between the different reports.

From the record before us we are not prepared to say that plaintiff in error has kept his accounts and made his reports in such a manner as not to subject himself to criticism as to his methods in this regard. While his method of keeping his accounts in folders and by his bank book might be found reasonably satisfactory and meet all requirements, under the law, for keeping his accounts if he were acting as trustee in a small estate for two or three years, only, or as executor in a small estate during the time usually necessary to close such an estate, yet we think a system of keeping accounts would be far more satisfactory, much safer and less liable to confusion and loss of vouchers and more convenient for future reference, if along with such system of folders containing receipts and disbursements and other original memoranda of the transactions, he kept in a bound book consecutive written memoranda of the same transactions made at the time the respective transactions occurred.

Counsel for plaintiff in error insist that his last report as filed, made up from the memoranda kept by him, showed clearly all the transactions as trustee, and also showed that he had carried on the affairs faithfully and in the interests of the beneficiaries and not in his own interest. Counsel for defendants in error have not pointed out in any place where the estate has lost by his method of book-keeping, although they insist that it is impossible to tell whether the estate has lost. Defendant in error Allen S. Bushnell admitted in his testimony that he did not know of any instance where the estate had lost any money through the lack of faithfulness or of diligence on the part of plaintiff in error, and the decree of the circuit court finds that while he was careless and neglectful in keeping his books, he "has nevertheless kept the farm lands which constitute a part of

the trust property rented to good advantage and at satisfactory rentals and has by his management thereof kept the same in good condition of repair and productiveness." In practically every important matter called specifically to our attention, either by the decree of the circuit court or in the briefs of counsel for defendants in error, in which we think there may be a reasonable basis for criticising the acts of plaintiff in error, such acts were performed at the suggestion and with the approval, and apparently sometimes at the earnest request, of the defendant in error Allen S. Bushnell.

The chancellor did not consider plaintiff in error so unworthy of trust that it was necessary to remove him at once as trustee and put the estate immediately into the hands of some other person. On the contrary, the decree finds that he, as executor, should without delay make a full settlement of the estate in the county court, and that when his reports have been approved in the county court he should make a full report of all his acts and doings as trustee, and after the approval of his trustee's report by the circuit court that court will thereupon appoint a trustee to succeed the present plaintiff in error in the further execution of the trust. We think, under the circumstances shown in this record, that the better procedure would have been to have required the plaintiff in error to close the estate in the county court as soon as was proper to be done under the direction of that court and then to make a report as trustee, and when that report was before the circuit court, that court would then be in a much better position to decide whether to remove plaintiff in error from his office as trustee. If the general charges in the decree are justified, as claimed by counsel for defendants in error, then plaintiff in error should have been removed at once as trustee and ordered to turn over immediately to his successor the trust funds in his hands and file a correct report thereafter, as was done in *Nevitt* v. *Woodburn,* 190 Ill. 283.

Nothing is called to our attention in this record to justify the removal of plaintiff in error as trustee. If his final reports as executor and as trustee, as they now stand, are correct and show with reasonable certainty that the estate has not lost any money, we do not think the fact, alone, that he has been possibly somewhat careless in his method of keeping the accounts would justify his removal as trustee. The mistakes he made with reference to the mortgage held by the estate against Caroline Bushnell and the debt owing by the estate to Helen McEwen were mere mistakes of judgment, for which defendant in error Bushnell and his wife were in large measure to blame, as the trustee's acts with reference to both of these transactions were with the approval, if not upon the urgent request, of Mr. and Mrs. Bushnell. While some mistakes have been pointed out in his reports it has not been shown that the estate has lost any money thereby, and it is very clear from the averments in the original bill filed in this proceeding by plaintiff in error, as well as by his testimony and the statements in the briefs of counsel, that he always stood ready to rectify these mistakes as soon as they were called to his attention. It is the duty of plaintiff in error to use every effort to close up his duties as executor as soon as possible and have his reports approved by the county court, and then to expedite in every way possible, under the direction of the circuit court, the making of a complete report to date of his acts and doings as trustee, the burden of proof resting upon him in each case to show the truth of the items in such reports.

The judgment of the Appellate Court and the decree of the circuit court will be reversed and the cause will be remanded to the circuit court for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*