Bessie Clardy, Appellant, v. S. O. Smith, Trustee of the Estate of Emery Otewalt, Deceased, Appellee.

Gen. No. 8,798.

Opinion filed January 12, 1934.

James H. Murphy, for appellant.

S. O. Smith, Jr., Jesse Peebles and E. R. Phelps, for appellee.

Mr. Justice Fulton delivered the opinion of the court.

Emery E. Otewalt departed this life testate, leaving Susan R. Otewalt, his widow, and Bessie Otewalt, now Bessie Clardy, his daughter, as his sole legatees and heirs at law. In his will he directed that his wife should be paid $2,000 and that his executor should take charge of the balance of his estate, convert the same into money, invest the proceeds and pay the income to his wife as long as she should live. At her death the executor was directed to pay the remainder of the income and the principal of the estate to the appellant. D. C. Vaniman was appointed executor of the will. During the administration of the estate D. C. Vaniman loaned to his son, A. T. Vaniman, the sum of $2,940,

on a promissory note dated October 1, 1920, and due two years after the date thereof. He also purchased from the trustees of the Peoples Bank of Girard, Illinois, a note of Richard Barnes for the sum of $3,500, secured by a mortgage on 80 acres of land in Macoupin county. This note and mortgage were dated February 9, 1918, and payable five years after date. In 1922, D. C. Vaniman resigned as executor and by decree of the circuit court, S. O. Smith, the appellee, was appointed trustee to take charge of the estate, and he duly qualified and acted as such from the time of his appointment to date. He filed an inventory on December 31, 1923, listing the assets above enumerated. On July 6, 1932, the appellee filed a report of his acts and doings in the circuit court of Macoupin county, to which the appellant filed written objections, contending that the trustee should be personally charged with the amount of the Richard Barnes note and mortgage and the note of A. T. Vaniman. Upon the hearing the circuit court overruled the objections and entered an order approving the report, to the entry of which order exceptions were taken and this appeal prosecuted.

The notes were never renewed but interest was collected in regularly by the trustee and paid over to Susan R. Otewalt as life tenant until sometime during the year 1929. In October of that year A. T. Vaniman became involved financially and after two judgments had been entered up against him he conveyed his property, consisting of a residence in Girard, to J. H. Tietsort as trustee for the benefit of his creditors under a trust agreement which provided that the property might be sold and also that A. T. Vaniman should pay to the trustee $100 per month on his indebtedness. The two judgment creditors received a partial preference under this trust arrangement and relinquished their liens upon the real estate. The trust property was at one time sold for the sum of $4,700 and $700 paid on the purchase price. The purchaser then defaulted and

the property is now held by Tietsort, trustee for the creditors.

During the years from 1922 to 1929, Vaniman was regarded as a prosperous business man and responsible for his indebtedness. During July of that year the two judgments were entered against him. After this the appellant called upon the trustee and discussed Vaniman's financial troubles with him. Vaniman paid the sum of $400 in to the trustee for the creditors and has paid nothing since. The property in the hands of the said trustee will only pay a small percentage of the amount due the creditors. There was about $2,500 due on the Vaniman note at the time the report was filed.

During the years 1929 and 1930 the trustee endeavored to obtain a deed from Richard Barnes to the 80 acres covered by the mortgage, but failed. He consulted the widow and daughter about foreclosure and finally brought foreclosure proceedings, which resulted in a sale and the trustee now holds the certificate of purchase to the 80 acres of land for the benefit of the Emery R. Otewalt estate. At the time the Barnes loan was originally made the 80 acres was worth from $60 to $70 per acre but at the time of the hearing on the trustee's report was worth in the neighborhood of $20 per acre. Susan R. Otewalt died January 17, 1932.

It is agreed by both counsel that the trustee was required to exercise the same care and prudence in the management of this estate which ordinary men would exercise in connection with their own affairs, and they are not chargeable for mere errors of judgment nor for accidental injuries or losses. *Wylie v. Bushnell,* 277 Ill. 484. The assets in question were received by appellee from D. C. Vaniman, his predecessor in trust. Neither of the loans was made by the present trustee. The interest was paid promptly and turned over to the widow until the collapse in 1929. At that time Vaniman and Barnes found themselves unable to meet their obligations and the trustee was left holding paper

which he had always considered good, greatly depreciated in value. There is no intimation in the record that the trustee in any way acted for his personal gain or in any selfish manner betrayed the trust reposing in him. In the recent case of *Suffolk v. Leiter,* 261 Ill. App. 82, the court on page 118 said: ''It is not strange, considering the size and character and situation of the estate, that some things could be found in its management that would be open to just criticism, and such is the fact in this case; but the same thing would be true of an ordinary person managing an estate of his own of like character and extent. These men are not to be judged by a standard of perfection which would insure the best results. It is sufficient if they have exercised reasonable care and prudence. . . . The law requires that a trustee must act in good faith in the management of all matters relating to the trust, and employ such vigilance, sagacity and diligence as prudent men of intelligence ordinarily employ in their own affairs. A trustee who in an honest effort to serve his trust errs in his judgment will not be condemned. If the rule were otherwise, it would not be possible to induce any person to act as trustee and assume the risk of losses which might result from mistakes of judgment.'' In this case no dishonesty or misconduct is shown on the part of appellee and it is not reasonable to believe that he could have had the funds of this estate invested in any form of security in 1929, yielding a reasonable return, where a loss would not have been suffered. It is our judgment that the testimony does not show any such imprudence, misconduct or neglect on the part of the appellee that should require him to make good the losses to be suffered by this estate from the trust assets and the action of the circuit court in approving the trustee's report is hereby affirmed.

*Affirmed.*