(No. 32537.—

CLAUDE U. STONE, Trustee, *vs.* SIDNEY BALDWIN *et al.*— (HELEN BALDWIN SMITH *et al.*, Appellees, *vs.* EDWIN V. CHAMPION, Appellant.)

*Opinion filed January 22, 1953—Rehearing denied March 24, 1953.*

HARRY E. WITHERELL, and CLARENCE W. HEYL, (BAER, DAVIS & WITHERELL, and HEYL, ROYSTER & VOELKER, of counsel,) all of Peoria, for appellant.

CASSIDY, SLOAN & CASSIDY, of Peoria, for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

The opinion of the Appellate Court recites very fully and correctly the facts in controversy in this cause, which are necessarily to a large extent repeated here. The will and codicil of Fannie G. Baldwin, subsequent to her death, were duly admitted to probate by the probate court of Peoria County. Claude U. Stone was appointed executor and administered the estate and was discharged as such executor on December 22, 1946. The will created a trust and by the terms of the codicil Claude U. Stone was designated as the sole trustee. Stone accepted the trusteeship and continued to act under the direction of the circuit court of Peoria County until he retired on June 17, 1949. Acting under the provisions of the will creating the trust, Stone designated George Z. Barnes successor-trustee, and Barnes qualified and acted as sole trustee until his death on July 16, 1951. The major part of the decedent's estate consisted of 798 shares of stock in the Peoria Star Company, which company had been engaged for many years in publishing an afternoon newspaper in the city of Peoria.

Sidney Baldwin is a daughter of said Fannie G. Baldwin. Frank Baldwin was a son but predeceased his mother, leaving two daughters, Margaret and Helen. Margaret Baldwin married John M. Holley and Helen Baldwin married Barton Smith, and they are the respective parents of Nancy Baldwin Holley, John Milton Holley, George Stockwood Holley, Stephanie Smith, Davidson Smith, Monica Smith and Bennett P. Smith, all minors.

The will of Fannie G. Baldwin directed the trustee to pay to the daughter, Sidney Baldwin, during her lifetime sixty per cent of all the net income from the trust estate. It also provided that upon the decease of said daughter leaving children surviving her, the same percentage of net income should be paid to such child or children or descendants *per stirpes*. It further provided that if the daughter died without leaving any child or descendant thereof, such portion of the net income should be paid in equal proportions to Helen Baldwin Smith and Margaret Baldwin Holley and their respective children *per stirpes*. The remaining 40 per cent of the net income of the trust estate was directed to be paid to said granddaughters in equal proportions. Upon the death of either granddaughter leaving any child or children surviving, her descendants to divide such income *per stirpes*. Should both granddaughters predecease the daughter, leaving no child or descendant thereof, then their portion of the income is to be paid to the said Sidney Baldwin during her lifetime.

The will further provided for the disposition of the income and also the corpus of the estate to certain specified charities in the event the daughter and two granddaughters die leaving surviving them no descendants then living.

The trust was to continue for a period of twenty years after the death of the last survivor of the daughter, Sidney Baldwin, and the granddaughters, Helen Baldwin Smith and Margaret Baldwin Holley. At the expiration of the period, the trust estate was to be distributed to the descendants of the two granddaughters *per stirpes*.

The testatrix stated that her purpose in continuing the trust for such period was that "I most ardently desire the newspaper known as the Peoria Star, which constitutes the greater part of the property that will come to this trust estate, to be and remain strictly a Peoria institution controlled at all times by Peorians for as long a period as it is possible for me to fix under the law."

Following the death of George Z. Barnes, successor-trustee, the respective beneficiaries made suggestions to the court for the appointment of a successor-trustee or trustees. On July 20, 1951, Sidney Baldwin filed her petition in the circuit court of Peoria County suggesting the appointment of the Central National Bank and Trust Company of Peoria. On July 26, 1951, Helen Baldwin Smith, Margaret Baldwin Holley, Nancy Baldwin Holley, John Milton Holley, George Lockwood Holley, Stephanie Smith, Davidson Smith, Monica Smith and Bennett P. Smith filed their petition in the trust proceeding, requesting that Lawrence A. Welch, John M. Holley, husband of Margaret Baldwin Holley, and Barton Smith, husband of Helen Baldwin Smith, be appointed the successor-cotrustees. On July 29, 1951, Claude U. Stone executed a written instrument and filed the same with the recorder of deeds of Peoria County, in which he nominated Edwin V. Champion as trustee. Objections were filed to the Stone petition and, on hearing in the circuit court, an order was entered finding that Stone had exhausted his power to appoint another trustee.

An extensive hearing was then had in the circuit court upon the several petitions of the respective beneficiaries and the chancellor took the matter under advisement and on December 13, 1951, entered an order finding that the duties incident to carrying out the trust were of such magnitude that one person should not be asked to assume a responsibility of such proportions; that it was for the best interests of the trust to have individual cotrustees rather than a corporation. Thereupon, by the further terms of the order, the court appointed Lawrence A. Welch and Edwin V. Champion, fixing the amount of their bond at $75,000 and directing that upon their filing a written acceptance of the trust and upon the approval of their bond, the said cotrustees named should enter upon the discharge of their duties as such cotrustees. The trustees complied with the above order and qualified under its terms.

In the order the court further found that the individuals designated as cotrustees of the trust were men of ability and highest integrity.

The opinion of the Appellate Court states that Sidney Baldwin, the majority income beneficiary, filed a statement in the cause for the purpose of advising the court that she had no objection to the decision of the chancellor and that she agrees with the finding of the court that Edwin V. Champion has all the qualifications that should make him a good trustee. Margaret Baldwin Holley, Helen Baldwin Smith and Patrick F. Crowley, guardian for the minor children and trustee for the unborn heirs, prosecuted an appeal to the Appellate Court to reverse that portion of the order appointing Edwin V. Champion cotrustee. Margaret Baldwin Holley, together with her husband and three minor children, resides in Roswell, New Mexico. Helen Baldwin Smith, with her husband and three minor children, lives in Wilmette, Illinois.

The duty was imposed upon the chancellor to make the appointments under his inherent equity powers, and the problem presented to the Appellate Court was whether or not the circuit court was warranted in appointing Edwin V. Champion as a cotrustee with Lawrence A. Welch. In the opinion, the Appellate Court asserted full confidence in the integrity, honesty and ability of Champion, but reversed the portion of the circuit court order which appointed him a cotrustee solely because of the relationship of attorney and client which existed between Champion and Claude U. Stone, prior to the former's appointment as a cotrustee on December 13, 1951.

It appears that after Claude U. Stone resigned as trustee of the Baldwin estate on June 17, 1949, he employed Champion as his attorney to assist in the preparation of a final accounting of his acts and doings as such trustee from 1939 to the date of his resignation. We assume Champion's duties included not only showing what his

client had done as trustee but to request reasonable compensation for the client's services. On July 31, 1951, the circuit court of Peoria County entered an order approving and confirming the report of Claude U. Stone as trustee, which also awarded him additional compensation. An appeal was taken from the court's order to the Appellate Court and submitted at the same term with the case under consideration.

On December 24, 1951, six days after his appointment as cotrustee, Champion notified Stone that he could no longer represent him. As recited by the Appellate Court, on December 24, 1951, Champion announced his withdrawal as attorney for Stone in open court and personally informed counsel for appellees of his withdrawal. Due to his absence from the State from December 25, 1951, until January 14, 1952, his formal withdrawal as counsel for Stone was not made a matter of record in the circuit court until January 22, 1952. Subsequent to December 24, 1951, other counsel represented Stone on appeal and filed briefs on his behalf in the Appellate Court.

The appellees, in their briefs, occupy many pages in denouncing the record of Claude U. Stone, as executor and trustee of the Baldwin estate, but do not connect Champion with any unprofessional conduct as attorney for Stone. They also insist that Edwin V. Champion has no such interest in the subject matter of this suit as would entitle him to appeal from the judgment of the Appellate Court. However, the appeal to the Appellate Court was directly from the order or decree of the circuit court of Peoria County appointing Lawrence A. Welch and Edwin V. Champion as cotrustees of the Baldwin estate, and Champion was the only person named in the notice of appeal and the only person injured by the judgment of that court. While an appeal by a person not a party to the record is unauthorized and void, here Champion was not only a party to the record but he was the deposed trustee, and, if there

is to be any review of the action of the Appellate Court, it must be presented on the appeal by Champion. (*Leland* v. *Leland,* 319 Ill. 426; *Glennon* v. *Britton,* 155 Ill. 232; *Knight* v. *Gregory,* 378 Ill. 565.) The appeal by Champion in this case is well supported by Illinois authorities.

We appreciate the careful consideration given this case by the Appellate Court. However, after Champion's appearance for Stone on the hearing and approval of Stone's final report as trustee, heard in the circuit court of Peoria County, Champion has apparently severed himself from all further services as attorney for Stone, which withdrawal was first announced in open court on December 24, 1951.

We feel that the chancellor who presided in this matter in the circuit court of Peoria County was in much better position to pass upon the fitness of Champion as a co-trustee than any other judicial officer. Champion had practiced his profession in said court for years and his character, ability and qualifications were of the highest order. His services as attorney for a claimant against the Baldwin estate, were finally concluded in December, 1951. He has never represented any party interested in the trust estate since that date. We are of the opinion that the chancellor was particularly well fitted to choose and select the co-trustees in this case.

It is the judgment of this court that no sufficient reason has been advanced for reversing the appointment made by the chancellor and, therefore, the judgment of the Appellate Court is reversed and the order of the circuit court of Peoria County affirmed.

*Appellate Court reversed; circuit court affirmed.*

Mr. JUSTICE SCHAEFER, dissenting:

The court's description of Champion's duties as attorney for Stone, the former trustee, in litigation adverse to the trust seems somewhat less than adequate. The opinion of the Appellate Court was based solely on his role in that

litigation, and the circumstances are fully set forth in that opinion. (*Stone* v. *Baldwin,* 348 Ill. App. 225.) His duties as an attorney hostile to the trust involved other and far more significant matters than the preparation of a trustee's final account and request for compensation, which are the only matters mentioned in the court's opinion.

In June of 1949, the present appellees, granddaughters of Fannie G. Baldwin, the settlor, filed their petition praying for the removal of Stone as trustee. Champion filed his appearance for Stone on June 17, 1949, and on the same day Stone resigned as trustee. The matter of Stone's accounting to the court for his administration of the trust was the subject of almost continuous litigation in the circuit court until July 31, 1951, when the trial court entered an order approving Stone's final report and awarding him $10,923.75 additional fees as trustee. Upon appeal by the appellee beneficiaries, the Appellate Court has held that Stone should be surcharged for one third of $165,404.80. Whether that amount should be increased is still under consideration in the Appellate Court.

The amount in dispute in that litigation is substantial and the proceedings are highly adverse to the trust and its beneficiaries, including the appellees in this case. These appellees and their minor children now own 91 per cent of the beneficial interest in the trust, computed on an actuarial basis, and the amount of their interest will constantly increase as their aunt, the other beneficiary, advances in age.

During the most critical part of this litigation, appellant was Stone's attorney and owed and still owes Stone the highest degree of loyalty. Appellant was Stone's own choice as trustee. He continued to serve as Stone's attorney in the trial and Appellate courts until after he was appointed cotrustee by the trial court.

Thus, strong legal and moral ties secure appellant's loyalty to Stone in a subject matter vitally affecting the trust itself and at the same time Stone's position with

reference to the same subject matter is directly adverse to the appellee beneficiaries. Under such circumstances, there is no justification for choosing appellant, out of all those available, to act as trustee.

Apart from the consideration which would normally be accorded to the interests of the beneficiaries of a trust, Canon 6 of the Canons of Professional Ethics squarely prohibits Champion's appointment. It provides: *"The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed."* Canons of Professional Ethics of the American Bar Association, 2 Martindale-Hubbell Legal Directory, p. 83A.

Mr. JUSTICE HERSHEY concurs in the foregoing dissenting opinion.