DELMAR W. DURDLE, Ex'r of the Estate of Clarence G. Miller, Deceased, Plaintiff-Appellee, v. DELMAR W. DURDLE, Ex'r of the Estate of Lawrence F. Miller, Deceased, *et al.,* Defendants (Verla Hill, Defendant-Appellant).

Fourth District  No. 4—85—0308

Opinion filed February 18, 1986.

Charles L. McNeil, of McNeil Law Office, of Mason City, for appellant.

Don P. Boggs, of Boggs, Knuppel & Krebaum, P.C., of Havana, for appellee.

JUSTICE MORTHLAND delivered the opinion of the court:

On November 10, 1983, the Mason County circuit court named Delmar W. Durdle trustee of a trust established by the will of Clarence G. Miller. The decedent left his residuary estate, consisting primarily of farmland and buildings, plus machinery, to Mr. Durdle in trust. The income from the trust was to be paid to the decedent's brother, Lawrence F. Miller, for life and then to Verla Hill and Karla Mae Bartels, in equal shares, for their lives. After Ms. Hill's and Ms. Bartels' deaths the income due the two women is to be paid to their children *per stirpes* until 20 years after the last surviving woman's death. At that time, the trust terminates.

The trustee is instructed to employ his son to farm the trust land "on the customary crop share basis." The will then accords the trustee a number of powers in order to farm the land and continue the trust in general. Most important of these is the following:

> "G. To deal with the fiduciary or any other estate or trust, even though the fiduciary is a trustee hereunder."

The record shows that the trustee is a director of the Mason County Service Group, a farm agency which provides supplies to local farmers, including the trust property. Clarence G. Miller had par-

ticipated in the group for at least five years prior to his death, and the trust continued as a dues-paying member. The trustee testified that he received compensation for each meeting attended as director, but this payment was not contingent in any way upon the success of the service group.

The record also indicates that the trustee received $500 for combining the trust crops. Durdle indicated that this charge was approximately one-half of the normal rate for custom combining and that he had combined the Miller farm ever since his son began tilling the land, several years before Clarence G. Miller's death. In addition, Durdle hired his son to do remodeling on a residence located on the trust property, prior to renting the house. Testimony indicated that the remodeling was necessary, that the younger Durdle frequently hired out his services as a carpenter, and that he had received compensation for his efforts on the trust residence. No testimony or other evidence suggested that the work was either unnecessary or overpriced.

Subsequent to establishment of the trust, Lawrence F. Miller died. Under the terms of the trust, Verla Hill and Karla Mae Bartels then became the trust income beneficiaries.

The record indicates that the residence on the trust land has been rented to tenants for some time since Clarence G. Miller's death. The trustee paid the rental income to Lawrence F. Miller's account both prior and subsequent to that beneficiary's death. The trustee concedes in his brief that rent from the date of Lawrence Miller's death should be attributed to the trust account rather than Lawrence Miller's estate. However, he suggests, no harm occurred through this error because the ultimate beneficiaries of the trust and the Miller estate are identical.

On November 29, 1984, the trustee filed his first current account with the Mason County circuit court. The trustee concedes this account to be inaccurate in two respects: (1) It does not list the rent from the farm residence as trust income; and (2) it failed to list certain stored grain as an asset.

On December 28, 1984, trust beneficiary Verla Hill filed objections to the trustee's report. Karla Mae Bartels did not join in these objections and has since testified to her complete satisfaction with the trustee's management of the trust. Hill objected that the trustee had not yet paid her any income despite there being cash on hand. She further complained that she had not received her share of the estate's personal property as directed by Clarence G. Miller's will. Hill next objected to the trustee's payment to himself for combining

as well as the failure to include in the accounts all rent and grain on hand. Finally, the objector claimed that Durdle's position as a director of a Mason County farm service cooperative, as well as his purchase of insurance and other services, demonstrated a conflict of interest with the trust since he purchased supplies from the cooperative and failed to "shop around" for the lowest prices. She sought to deny the trustee any fees and also to remove him as trustee.

After an evidentiary hearing on the objections, the circuit court approved the first current account as filed, as well as fees for the trustee and his attorney, and declined to remove the trustee. This appeal ensued.

■■ ■ A trustee is to exercise the same degree of care in managing trust properties as "persons of prudence, discretion and intelligence exercise in the management of their own affairs \*\*\*." (Ill. Rev. Stat. 1983, ch. 17, par. 1675; *Wylie v. Bushnell* (1917), 277 Ill. 484, 115 N.E. 618.) The trial court's finding that the trustee has exercised the requisite degree of care will not be overturned unless it is against the manifest weight of the evidence. (*Stone v. Baldwin* (1952), 348 Ill. App. 225, 109 N.E.2d 244, *rev'd on other grounds* (1953), 414 Ill. 257, 111 N.E.2d 97.) Moreover, not every instance of mistake or neglect on the trustee's part justifies removal of the trustee; only if the trustee endangers the trust fund and removal is clearly necessary to save the trust should a court remove a trustee. (*Wylie v. Bushnell* (1917), 277 Ill. 484, 115 N.E. 618; *Suffolk v. Leiter* (1931), 261 Ill. App. 82.) Absent an abuse of discretion, the trial court's refusal to remove a trustee or to award fees will not be disturbed. *Brown v. Brown* (1978), 62 Ill. App. 3d 328, 379 N.E.2d 634; *Stone v. Baldwin* (1952), 348 Ill. App. 225, 109 N.E.2d 244.

■ In the present case, the trial court erred insofar as it approved the trustee's accounts "as filed" despite Durdle's concession that he accounted for rent and stored grain improperly, albeit inadvertently. The trustee should correct these omissions by amending the first current report. However, the incorrect account must not stand.

■ The other allegations of impropriety or mismanagement are clearly without foundation. The objector concedes that Durdle has managed the trust property in a manner virtually identical to what transpired before Clarence G. Miller's death. No evidence suggests that the trustee is squandering money with improvident purchase of farm supplies. Moreover, the trust's membership in the Mason County cooperative netted it some $200 in dividends above what was

paid for membership. Likewise, no evidence suggests that Durdle's position as director of the cooperative is enhanced by the trust belonging to the group.

The trustee's payment for combining trust land is potentially more troublesome, despite uncontradicted testimony that the trust paid only one-half the market rate for this service. This problem arises from Hill's testimony that custom share farming typically does not require the landowner to provide combining. However, the trust's proviso that the younger Durdle should continue to farm the decedent's land on *"the customary crop share basis"* (emphasis added) suggests that the arrangement in effect during Clarence Miller's life was to continue. Moreover, we conclude that subparagraph (G), quoted above, allows the trustee to deal with himself as an individual. Under this provision, the trustee's payment to himself for combining was clearly not improper. *Morris v. The Broadview, Inc.* (1946), 328 Ill. App. 267, 65 N.E.2d 605.

As for the failure to pay any income to the trust beneficiaries, this was adequately explained by the fact that the trustee was forced to borrow approximately $9,000 to continue the farming operation. Repayment of this loan clearly eliminated any profit for the year in question.

Likewise, the trial court correctly concluded that Hill had ample opportunity to select items of the decedent's personal property before it was sold.

We direct the trial court to order the trustee to amend his first current account so that it accurately reflects trust assets and earnings. In all other respects, we affirm the judgment of the trial court.

Affirmed in part and reversed in part and remanded with directions.

McCULLOUGH, P.J., and GREEN, J., concur.