NO. 4-08-0151          Filed 11/21/08

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

PATRICIA A. LAUBNER and PAMELA A.      )    Appeal from
LARSON,                                )    Circuit Court of
          Plaintiffs-Appellants,       )    Sangamon County
          v.                           )    No. 07CH571
JP MORGAN CHASE BANK, N.A., Trustee;   )
DEBORAH B. ALLEY, Trustee; and SARAH   )
A. MANGES, SUSAN A. MERTZ, KELSEY L.   )
DENNIS, COURTNEY L. LARSON, KRISTIN    )
A. LARSON, WILLIAM CURVIN LARSON,      )
LAWSON M. MERTZ, EMILY MANGES, HALEY   )
M. MANGES, and All Future Descendants  )    Honorable
of WILLIAM J. ALLEY, Deceased,         )    Robert J. Eggers,
          Defendants-Appellees.        )    Judge Presiding.

_____

JUSTICE COOK delivered the opinion of the court:

On October 31, 2007, plaintiffs Patricia A. Laubner and

Pamela A. Larson filed an amended petition to remove codefendant

Deborah B. Alley as trustee and to modify the distributions being

made from the trusts.  On November 30, 2007, defendants, co-

trustees Deborah B. Alley and JP Morgan Chase Bank, N.A., filed a

motion to dismiss.  Following a hearing on January 25, 2008, the

trial court granted defendants' motion to dismiss.  Plaintiffs

appealed.  We affirm.

I. BACKGROUND

William J. Alley, deceased, had four daughters: Patri-

cia A. Laubner (plaintiff), Pamela A. Larson (plaintiff), Sarah

A. Manges, and Susan A. Mertz.  Patricia has one child, Kelsey L.

Dennis. Pamela has three children: Courtney L. Larson, Kristin A. Larson, and William Curvin Larson. Sarah has two children: Emily Manges and Haley M. Manges. Susan has one child, Lawson M. Mertz. Sometime before his death, William married Deborah B. Alley, who would become plaintiffs' stepmother.

On March 23, 1994, William executed a trust entitled "Irrevocable Split-Dollar Insurance Trust Agreement" (original trust). The trust was between William (grantor) and Deborah (co-trustee) and Bank One, Springfield (cotrustee). Bank One, Springfield has since become JP Morgan Chase Bank, N.A. (JP Morgan). The original trust provided that should either Deborah or JP Morgan cease to be a trustee, Deborah could appoint another trustee or, if she did not appoint one, the continuing trustee could appoint a successor. When William passed away in 1996, the principal of the original trust was divided into four separate trusts, one for each of the four daughters.

By the direction of cotrustees Deborah and JP Morgan, plaintiffs' trusts were further divided as follows. Patricia's trust was divided into three trusts: (1) the Patricia Laubner Generation Skipping Tax (GST) Exempt Trust #1, (2) the Patricia Laubner GST Exempt Trust #2, and (3) the Patricia Laubner GST Nonexempt Trust (Patricia's trusts). Likewise, Pamela's trust was divided into three trusts: (1) the Pamela Larson GST Exempt Trust #1, (2) the Pamela Larson GST Exempt Trust #2, and (3) the

Pamela Larson GST Nonexempt Trust (Pamela's trusts).  The record does not indicate how Deborah and JP Morgan administered and/or divided the trusts of Sarah and Susan, although we have no reason to guess that those trusts were handled differently.

As of December 31, 2006, the value of Patricia's trust was as follows:

| Name of Trust | Value of Trust |
|---|---|
| The Patricia Laubner GST Exempt Trust #1 | $1,505,291.76 |
| The Patricia Laubner GST Exempt Trust #2 | $500,798.87 |
| The Patricia Laubner Nonexempt Trust | $2,870,407.52 |
| Total Value of Patricia's Trusts | $4,876,498.15 |

As of December 31, 2006, the value of Pamela's trust was as follows:

| Name of Trust | Value of Trust |
|---|---|
| The Pamela Larson GST Exempt Trust #1 | $1,517,285.77 |
| The Pamela Larson GST Exempt Trust #2 | $508,726.91 |
| The Pamela Larson Nonexempt Trust | $2,994.306.39 |
| Total Value of Pamela's Trusts | $5,020,319.07 |

Patricia's trusts and Pamela's trusts were subject to the same distribution standard set forth in the original trust

agreement, namely:

"During the Trust Period, the trustees shall hold, invest, and reinvest each share so provided as the principal of a separate trust hereunder, <u>collect</u> <u>the</u> <u>income</u> <u>therefrom</u> <u>and</u>, after deducting from said income all proper charges and expenses, in each year <u>pay</u> at least quarterly to or apply for the use of such daughter and such daughter's issue, <u>so</u> <u>much</u> <u>of</u> <u>the</u> <u>net</u> <u>income</u> <u>as</u> <u>the</u> <u>trustees</u> <u>shall</u> <u>deem</u> <u>advisable</u> <u>for</u> <u>the</u> <u>proper</u> <u>care</u>, <u>support</u>, <u>maintenance</u> <u>or</u> <u>education</u> <u>of</u> <u>such</u> <u>daughter</u> of the grantor and such daughter's issue <u>and</u> <u>shall</u> <u>add</u> <u>to</u> <u>the</u> <u>principal</u> <u>from</u> <u>time</u> <u>to</u> <u>time</u> <u>any</u> <u>balance</u> <u>of</u> <u>net</u> <u>income</u> <u>not</u> <u>so</u> <u>applied</u>. The trustees shall be authorized also to pay to or apply to the use of such daughter and her issue, at any time and from time to time, so much of the principal of such trust (even to the extent of wholly terminating the trust) as the trustees may deem advisable for the proper care, support, maintenance or education of such daughter or her issue or for any other purpose after giving such consideration

- 4 -

as the trustees may deem feasible and appropriate to other financial resources available for the purpose to which such payment or application is proposed to be made.  In exercising their discretion with respect to the payment or application of income or principal pursuant to the provisions of this paragraph, the grantor directs his trustees to bear in mind that his primary concern is the comfortable maintenance and support of his daughters during their lifetime."  (Emphases added.)

Under this rather discretionary distribution standard, Deborah and JP Morgan adopted a distribution schedule of $11,500 per month to both Patricia and Pamela.  This amounts to an annual distribution of 3.5% of the fair market value of the trusts.

It appears some exceptions to the steady distribution of funds existed.  For example, in 2004, the trustees distributed $54,893 in lump sum to Patricia to pay off her credit card debt and balance owing on her vehicle.  During this time, it seems that monthly distributions to Patricia were as high as $12,500 because she purportedly fell on financial hard times due to the loss of her husband's income.  It also seems, based on an admission made in plaintiffs' complaint, that Patricia and Pamela are reimbursed, or the trustees directly pay, for tuition, fees, and

living expenses for plaintiffs' children, up through and including graduate school. The complaint mentioned one instance where the cotrustees hesitated to pay a "medical bill" for one of the grandchildren, but it appears, based on an admission in the complaint, that this bill was ultimately paid with the use of trust funds.

On March 26, 2007, Patricia and Pamela's attorney, Sarah Delano Pavlik, wrote JP Morgan to propose a change in the established distribution plan. Attorney Pavlik noted that the monthly distributions came solely from the nonexempt trusts. The nonexempt trusts were subject to the GST tax, which, as of March 2007, was set at a rate of 45%. To avoid imposition of the GST tax upon plaintiffs' deaths, Pavlik proposed that the distributions from the nonexempt trusts be calculated to liquidate the nonexempt trusts over plaintiffs' life expectancies, resulting in a monthly distribution of $17,769 for Patricia and $18,536 for Pamela over approximately the next 30 years. Pavlik noted that liquidating the nonexempt trusts of Patricia and Pamela would not put them at risk because, in the event they should need additional funds, the assets in their exempt trusts would still be able to provide for them. The cotrustees declined to accommodate plaintiffs' requests as set forth in the letter.

On July 25, 2007, plaintiffs filed a petition requesting to convert the distribution standard of the trusts and to

- 6 -

modify the trust agreement such that the funds be distributed at a rate of 5% of the total fair market value of all of the plaintiffs' trusts but that the funds only be distributed from the nonexempt trusts.  Plaintiffs also requested that, in the event of Deborah's death or incapacitation, each respective plaintiff would become cotrustee of her own trusts and have the discretion to appoint a new corporate cotrustee if she so desired.

On August 27, 2007, defendants filed a motion to dismiss.  On October 30, 2007, the trial court entered an order cancelling a hearing on the matter; allowing leave to amend the petition; and appointing a guardian ad litem (GAL) for the minor remainder beneficiaries, i.e., Emily and Haley Manges, and future descendants of grantor William Alley.

On October 31, 2007, plaintiffs filed the amended petition at issue in this appeal, alleging that Deborah in particular acted with an improper motive due to her personal animosity toward plaintiffs.  Therefore, plaintiffs requested that the trial court remove Deborah as a trustee and appoint each plaintiff cotrustee of her respective trusts.  Plaintiffs further alleged that both trustees breached their fiduciary duty by (1) showing a preference for the remainder beneficiaries by preserving the principal rather than focusing on plaintiffs' comfortable maintenance, (2) adopting arbitrary distribution standards, and (3) wasting the assets of the trusts by unnecessarily subjecting

- 7 -

plaintiffs' descendants to generation- skipping taxes.  Plain-
tiffs requested that the trustees distribute income so as to
deplete the nonexempt trusts over plaintiffs' lifetimes and that
plaintiffs' attorney fees from the instant case be paid from the
nonexempt trust.

On November 30, 2007, defendants filed a motion to
dismiss, arguing that the amended complaint did not allege a
factual basis for removal of Deborah as cotrustee or for reforma-
tion of the trust.  See 735 ILCS 5/2-615 (West 2007).  On January
24, 2008, the GAL for the minor remainder beneficiaries joined in
defendants' motion to dismiss plaintiffs' amended complaint.
Some of the adult remainder beneficiaries of plaintiffs' trusts,
who also happen to be plaintiffs' children, Kelsey L. Dennis,
Courtney L. Larson, Kristin A. Larson, William Curvin Larson,
entered an answer in the circuit court asking that plaintiffs'
relief be granted.  No adult remainder beneficiary entered a
request that the court deny plaintiffs' relief.

On January 25, 2008, the trial court held a hearing on
defendants' motion to dismiss and granted said motion.  The court
endorsed the argument of cotrustees' counsel, that plaintiffs
simply failed to allege a basis for removing Deborah as trustee
or for modifying the distribution scheme.  The court told plain-
tiffs they could amend their complaint, but plaintiffs did not do
so.  This appeal followed.

- 8 -

## II. ANALYSIS

On appeal, plaintiffs appeal the dismissal under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2006)) of their petition, which began as follows:

> "[Plaintiffs] petition the Court (a) [to] remove Deborah B. Alley as Trustee of the Trusts (as defined below), (b) to appoint Pamela A. Larson as Co-Trustee of the Pamela Trusts (as defined below), (c) to appoint Patricia A. Laubner as Co-Trustee of the Patricia Trusts (as defined below), and (d) to modify the distributions being made from the Trusts as set forth below."

We will first address whether plaintiffs properly stated a claim for reformation of the trust, especially as this pertains to modifying the distribution scheme. We will then address whether plaintiffs properly stated a claim for removing Deborah as a trustee and appointing plaintiffs as successor trustees.

A dismissal motion under section 2-615 attacks the legal sufficiency of the complaint. Canel v. Topinka, 212 Ill. 2d 311, 317, 818 N.E.2d 311, 317 (2004), citing Illinois Graphics Co. v. Nickum, 159 Ill. 2d 469, 484, 639 N.E.2d 1282, 1289 (1994). A section 2-615 motion does not raise affirmative factual defenses but alleges only defects appearing on the face

- 9 -

of the complaint.  Canel, 212 Ill. 2d at 317, 818 N.E.2d at 317. In evaluating a section 2-615 dismissal, the question is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted.  Canel, 212 Ill. 2d at 317, 818 N.E.2d at 317.  The trial court should dismiss the cause of action only if it is clearly apparent that no set of facts can be proven which will entitle the plaintiff to recovery.  Canel, 212 Ill. 2d at 318, 818 N.E.2d at 317.  We review dismissals under section 2-615 de novo.  Canel, 212 Ill. 2d at 318, 818 N.E.2d at 317.

However, the general policy favoring a liberal con-struction of the pleadings as described in Canel cannot cure a plaintiff's failure to set forth well-pleaded facts.  See Teter v. Clemens, 112 Ill. 2d 252, 256-57, 492 N.E.2d 1340, 1342 (1986).  Illinois is a fact-pleading state, meaning that a plaintiff must allege facts that are sufficient to bring his claim within the scope of a legally recognized cause of action. Teter, 112 Ill. 2d at 256, 492 N.E.2d at 1342.  Conclusions of law and conclusory factual allegations unsupported by specific facts are not deemed admitted.  Time Savers, Inc. V. LaSalle Bank, 371 Ill. App. 3d 759, 767, 863 N.E.2d 1156, 1163-64 (2007). It is often difficult to distinguish the difference between a conclusion and an ultimate fact, and the amount of detail neces-

sary to adequately plead a cause of action may depend upon the circumstances of a given case. 3 R. Michael, Illinois Practice §23.4, at 308 (1989), citing People ex rel. Fahner v. Carriage Way West, Inc., 88 Ill. 2d 300, 307, 430 N.E.2d 1005, 1008 (1981). Courts generally adopt a stricter approach and require more specificity in the pleadings where (1) the pleader had an opportunity to amend the complaint and did not (3 R. Michael, Illinois Practice §23.4, at 313 (1989), citing Knox College v. Celotex Corp., 88 Ill. 2d 407, 421, 430 N.E.2d 976, 983 (1981) (regarding plaintiff's failure to amend)) or (2) the cause of action is generally disfavored or simply is such that it would require exceptional circumstances for the plaintiff to prevail (3 R. Michael, Illinois Practice §23.4, at 311-12 (1989) (regarding exceptional circumstances/generally disfavored causes of action)); see also Thomas v. Hileman, 333 Ill. App. 3d 132, 136, 139, 775 N.E.2d 231, 234, 236 (2002) (where court found the disfavored action of malicious prosecution pleaded with insufficient specificity).

A. Current Distribution Scheme

1. Distribution Amount

Plaintiffs pleaded that the cotrustees breached their fiduciary duties by "arbitrarily" setting the distribution rate at 3.5% of the principal per year, resulting in payments of

- 11 -

$11,500 per month for each plaintiff. Plaintiffs believe that a distribution scheme that amounts annually to only 3.5% of the value of the principal of the trust, so that the value of the principal is protected, thwarts William's stated purpose of providing for the comfortable maintenance and support of his daughters over their lifetimes and has the effect of favoring the remainder beneficiaries over plaintiffs. Plaintiffs also pleaded that the distribution amount (i.e., $11,500 per month each) is arbitrary because the cotrustees did not sufficiently communicate with plaintiffs to see whether that amount would be enough to sustain their current lifestyles.

A trustee is to exercise the same degree of care in managing a trust as persons of prudence and intelligence exercise in their own affairs. Durdle v. Durdle, 141 Ill. App. 3d 12, 15, 489 N.E.2d 1142, 1144 (1986). A trustee is held to a high standard of conduct and must exercise the utmost or highest good faith in the administration of the trust. In re Estate of Muppavarapu, 359 Ill. App. 3d 925, 929, 836 N.E.2d 74, 77 (2005). Acting with good faith in administering the trust means that the trustee must act honestly and with undivided loyalty to the trust, not merely with the standard of the workaday world but with the most sensitive degree of honor. Rennacker v. Rennacker, 156 Ill. App. 3d 712, 715, 509 N.E.2d 798, 800 (1987). The trustee must be mindful of the beneficiaries' interests, and the

trustee cannot act inconsistently with the beneficiaries' inter-ests, irrespective of the trustee's good or bad faith.  Rennacke-r, 156 Ill. App. 3d at 715, 509 N.E.2d at 800.

That being said, a court should not interfere with a trustee's exercise of discretion given to him or her by the trust instrument so long as the trustee does not act in a wholly unreasonable and arbitrary manner. Chicago Title & Trust Co. v. Chief Wash Co., 368 Ill. 146, 155, 13 N.E.2d 153, 157 (1938). Likewise, "[w]here discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion."  Restatement (Second) of Trusts §187, at 402 (1959) (current through 2008).  The trust instrument at issue here confers a great deal of discretion to the trustees. Each authorization of power in the distribution clause seems to include the phrase, "as the trustees shall deem advisable."

We cannot say the cotrustees are acting in a "wholly unreasonable and arbitrary" manner because they have sought to protect the principal of the trust, especially where they con-tinue to distribute the substantial sum of $11,500 per month to each plaintiff, not including educational and living expenses for plaintiffs' children.  See Chicago Title, 368 Ill. at 155, 13 N.E.2d at 157.  To the contrary, the cotrustees' decision to

preserve the principal and distribute from the income of the trust seems to be in keeping with William's stated intent:

> "The trustees shall *** collect the income [from the trusts] and, *** pay *** so much of the net income as the trustees shall deem advisable for the proper care, support, maintenance or education of such daughter *** and shall add to the principal from time to time any balance of net income not so applied."

From this clause, it seems clear William envisioned some sort of preservation of the principal. In fact, William appears to have envisioned that the income earned on the trust could potentially exceed the amount necessary to provide for his daughters' comfortable support and said excess would therefore be used to grow the principal of the trust. Simply because William authorized depletion of the principal in the event that his daughters' needs were not being met does not mean that the cotrustees are breaching their fiduciary duty by holding off on that authorization. Nor does it mean that the cotrustees are breaching their fiduciary duty by favoring the remainder beneficiaries over plaintiffs.

Plaintiffs cite <u>Northern Trust Co. v. Heuer</u>, 202 Ill. App. 3d 1066, 1070, 560 N.E.2d 961, 964 (1990), for the proposition that a fiduciary's duty to each beneficiary precludes it

- 14 -

from favoring one party over another. In <u>Heuer</u>, the trustee filed a complaint in the circuit court for construction of the trust agreement and argued that the court interpret the trust in a manner that was favorable to one beneficiary and detrimental to the other. <u>Heuer</u>, 202 Ill. App. 3d at 1068-69, 560 N.E.2d at 962-63. The court found the trustee breached his duty of impartiality in that he should not have argued for an interpretation that favored one of the beneficiaries at the expense of the other. <u>Heuer</u>, 202 Ill. App. 3d at 1072, 560 N.E.2d at 965. <u>Heuer</u> involves an instance of blatant favoritism on the part of the trustee for one beneficiary over the other.

In contrast, the cotrustees here merely adopted a conservative and responsible distribution plan that incidentally benefits the remaindermen by protecting the principal. We note it can just as well be said that protecting the principal benefits plaintiffs; cost of living is sure to rise, and plaintiffs themselves state they expect to live another 30 years. The cotrustees are not acting partially by protecting the principal of the trust.

Plaintiffs pleaded that cotrustees have never met with them in person to establish that $11,500 per month is a sufficient amount of money to sustain their respective lifestyles. Plaintiffs cite section 50 of the Restatement of Trusts, comment <u>e</u>, for the proposition that the "trustee[s have] a duty to act in

a reasonable manner in attempting to ascertain the beneficiary's needs." Restatement (Third) of Trusts §50, Comment e(1), at 271 (2003). Plaintiffs argue that the trusts contain millions of dollars to properly provide for the comfortable life of plaintiffs, not for preservation of the principal of the trust, and that the current distribution rate of $11,500 per month caused plaintiffs to lower their standard of living. However, no requirement exists that trustees meet in person with beneficiaries.

More to the point, plaintiffs have not set forth any facts to show <u>why</u> $11,500 per month is not enough to sustain their respective lifestyles in a manner that is "comfortable." Plaintiffs make no allegations of debt (aside from the credit debt that trustees paid off), steep mortgage payments, or any other expense that we can imagine that would result in $11,500 per month being insufficient. Without pleading facts to support the assertion that $11,500 per month is insufficient to support a comfortable lifestyle, said assertion is merely a conclusory factual allegation. See <u>Time Savers</u>, 371 Ill. App. 3d at 767, 863 N.E.2d at 1163-64 (conclusory factual allegations are not deemed admitted).

### 2. <u>Allegation</u> <u>of</u> <u>Waste</u>: <u>the</u> <u>Nonexempt</u> <u>Trust</u>

Plaintiffs complain that the cotrustees are subjecting the trusts to waste by refusing to distribute from the nonexempt

trust at a rate that would lead to its depletion by the end of plaintiffs' respective lives and thereby avoid any generation-skipping tax on the funds in the nonexempt trust. Such a depletion of the nonexempt trust would lead to a distribution rate of approximately $18,000 per month for each plaintiff. Plaintiffs cite Warner v. Rogers, 255 Ill. App. 78, 87 (1929) (1929 WL 3388, at 4), for the general proposition that trustees owe a duty to remainderman to manage the trust estate so as to prevent waste.

Plaintiffs have not pleaded sufficient facts to show the cotrustees are committing waste by failing to deplete the nonexempt trust. The only fact that plaintiffs pleaded in support of their claim that failing to immediately start depleting the nonexempt trust constitutes waste is that nonexempt trust funds are currently subject to a 45% generation-skipping tax. However, plaintiffs predict they will each live another 30 years. The tax laws might be different at that time. The cost of living will have risen. Plaintiffs might require expensive end-of-life care. It seems the trustees are acting prudently at this stage, planning ahead for the aforementioned concerns rather than depleting the trust at a steady rate.

Plaintiffs have not set forth facts to establish a breach of fiduciary duty, and therefore reformation of the distribution scheme would not be appropriate. Generally, reformation is appropriate only in extreme circumstances, such as

- 17 -

where the trust as written actually frustrates the grantor's intent because circumstances evolved in a manner that the grantor could not have anticipated. Dyer v. Paddock, 395 Ill. 288, 294-95, 70 N.E.2d 49, 52 (1946); see also In re Estate of Phelan, 375 Ill. App. 3d 875, 882, 874 N.E.2d 185, 191 (2007) (noting Illinois courts' aversion to reforming trusts). Ordering the cotrustees to adopt a distribution scheme wherein the nonexempt trust was depleted at a rate of approximately $18,000 per month would take away most of the discretion that William expressly granted to the cotrustees.

B. Whether Plaintiffs Stated a Claim for Removal

Plaintiffs argue that they properly stated a claim for removal of Deborah as cotrustee. In support of their claim to remove Deborah, plaintiffs alleged in their petition that Deborah acted with "improper motive" and that she improperly managed the trusts. In regard to their claim that Deborah acted with improper motive, plaintiffs set forth the following circumstances that led them to believe that Deborah had a great deal of animosity for them. Following William's death, Patricia provided the local newspaper with family information to be used in the obituary. Apparently, Deborah felt the information was too personal to be released to the public. Deborah did not attend the memorial service for William that Patricia organized, even though Deborah was in town on the date of the service. Also in 1996,

- 18 -

more than 10 years prior to the instant action, Deborah went to Patricia's house and accused Patricia of being responsible for William's suicide.  At a date not clear from the record, Deborah invited all three of William's daughters except for Patricia to her son Brayton's wedding.  On at least one occasion, Deborah denied Pamela access to visit William's ashes, which Deborah interred in a gated community.  Plaintiffs contend that Deborah refused to communicate with them, noting that she did not reply to a letter from Patricia dated August 18, 2003, or to the letter from attorney Pavlik dated September 7, 2006.  Plaintiffs believe that Deborah refused to increase distributions because of this alleged personal animosity.

A court of equity has inherent powers to remove a trustee for breach of trust, misconduct, or disregard of his fiduciary duties.  Chicago Title, 368 Ill. at 155, 13 N.E.2d at 157.  However, removal of a trustee is an extreme remedy, and neither the court nor any party should lightly disregard the testator's choice of trustee.  See Wylie v. Bushnell, 277 Ill. 484, 505, 115 N.E. 618 (1917).  Not every instance of mistake or neglect on the trustee's part requires the removal of the trustee.  Durdle, 141 Ill. App. 3d at 15, 489 N.E.2d at 1145.  The court should remove a trustee only if the trustee endangers the trust fund and removal is clearly necessary to save the trust.  Durdle, 141 Ill. App. 3d at 15, 489 N.E.2d at 1145.  Personal

hostility between a trustee and a beneficiary is not a <u>per</u> <u>se</u> ground for removal of the trustee. <u>Rennacker</u>, 156 Ill. App. 3d at 715, 509 N.E.2d at 800. To remove the trustee, the hostility must be shown to interfere with the beneficial administration of the trust. <u>Rennacker</u>, 156 Ill. App. 3d at 715, 509 N.E.2d at 800, citing <u>Wylie</u>, 277 Ill. 484, 115 N.E. 618. Such hostility is just one factor to consider where the "hostilities of the parties combine with other circumstances to render removal of the trustee essential to the interests of the beneficiary and the execution of the trust." <u>Rennacker</u>, 156 Ill. App. 3d at 715, 509 N.E.2d at 800.

In dismissing plaintiffs' claim for removal of Deborah, the trial court stated:

"The fact that they don't like their step-
mother is not sufficient to carry the day
here. If you want time to amend, I'll give
you time to amend, but you're going to have
to tell me something more than you are at
this point."

Plaintiffs did not take advantage of their opportunity to amend the complaint. See <u>Knox College</u>, 88 Ill. 2d at 421, 430 N.E.2d at 983. The cause of action itself, <u>i.e.</u>, removal of a trustee, generally requires extraordinary circumstances for the plaintiff to prevail. See <u>Durdle</u>, 141 Ill. App. 3d at 15, 489 N.E.2d at

1144-45 (stating removal only necessary where the fund itself is in danger). As such, the pleadings in this case must contain a high degree of specificity and detail. See 3 R Michael, Illinois Practice §23.4, at 311-13 (1989).

This case is distinguishable from other cases we were able to find regarding removal of the trustee where personal animosity existed between the trustee and the beneficiary. For example, in Rennacker, in addition to the hostility between the trustee and the beneficiary, the trustee also sold the trust residence and put the sale proceeds under his own social security number, constituting a "questionable transaction at best." Rennacker, 156 Ill. App. 3d at 715, 509 N.E.2d at 800.

Here, it does not appear that the alleged personal animosity endangered the trust fund. As discussed above, there is nothing unreasonable about the way that Deborah has been coadministering the trust. As such, plaintiffs have not pleaded sufficient facts to justify Deborah's removal as trustee. Because plaintiffs have not pleaded sufficient facts to justify Deborah's removal, they certainly have not pleaded sufficient facts to warrant appointing themselves as successor trustees.

## C. Attorney Fees

Finally, we affirm the trial court's denial of plaintiffs' request for attorney fees in this matter. At the trial court's discretion, it may order that the trust pay plaintiffs'

- 21 -

attorney fees where the plaintiffs' actions in bringing a lawsuit somehow confer a benefit on the trust, but will not award fees where plaintiffs seek personal benefits.  <u>Stein v. Scott</u>, 252 Ill. App. 3d 611, 617, 625 N.E.2d 713, 718 (1993).  Here, plaintiffs' claim did not benefit the trust.  The court did not abuse its discretion in declining to award attorney fees.

### III. CONCLUSION

For the aforementioned reasons, we affirm the trial court's judgment.

Affirmed.

TURNER and STEIGMANN, JJ., concur.