# IN THE COURT OF APPEALS OF IOWA

No. 19-0896
Filed November 4, 2020

**EELEN YOUNG EBLING and ABBY LYON McDONALD,**
    Plaintiffs-Appellants,

**vs.**

**SARAH HASKEN,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Dubuque County, Thomas A. Bitter, Judge.

Trust beneficiaries seek removal of a trust advisor to the George L. McDonald Trust and request the advisor be prohibited from appointing her successor. **AFFIRMED.**

Darin S. Harmon of Kintzinger, Harmon, Konrardy, P.L.C., Dubuque, for appellants.

Sean P. Moore of Brown, Winick, Graves, Gross, Baskerville & Schoenebaum, P.L.C., Des Moines, for appellee.

Considered by Tabor, P.J., and May and Greer, JJ.

**GREER, Judge.**

Focusing on Sarah Hasken's refusal to vote 625 shares of A.Y. McDonald Industries, Inc. (AYM) stock held by the George L. McDonald Trust (Trust) at a December 2014 shareholding meeting, these trust beneficiaries,[1] Eelen Ebling and Abby McDonald, raise a conflict of interest against Hasken. Starting in January 2014, Hasken served as a trust advisor for the Trust, along with Robert McDonald II (McDonald). Hasken denies there is a conflict or that she should be removed from her role as trust advisor. She refuses to resign.

**History.** This trust dispute is not new to us. Previously, we determined a fact issue existed, preventing summary judgment, on whether Hasken should be removed as trust advisor. *See Ebling v. Hasken*, No. 16-1904, 2017 WL 6034124, at *4-5 (Iowa Ct. App. Dec. 6, 2017) (reversing the grant of summary judgment removing Hasken as trust advisor because "we cannot say as a matter of law that Hasken's choice to take no action with the shares was against the interests of the beneficiaries"). Because we are here again, we review the history of the trust. In 1970, George L. McDonald (the settlor) established a revocable trust that upon his death became irrevocable. He named his daughters, Ebling and Abby McDonald, as the sole income beneficiaries. In the original trust document, the settlor appointed two trust advisors from the AYM group.[2] At the time of her appointment

---

[1] To avoid confusion, we refer to Ebling and McDonald as the "trust beneficiaries." The Trust assets consist of 1250 voting shares of AYM stock, and the trust document granted each of the two trust advisors 625 voting shares of AYM stock.
[2] The settlor's nephews, Robert Delos McDonald and James Bruce McDonald, were original trust advisors under the Trust. Under conditions not relevant here, new trust advisors were appointed over the years. Hasken was appointed when a successor trust advisor resigned.

in 2014, Hasken was vice president and corporate secretary for AYM[3] and a member of its board of directors. The other trust advisor, McDonald, also serves as the senior vice president of AYM and is a member of its board. The trust charged the advisors with the right to vote one-half of the 1250 shares of AYM stock held by the trust. Paragraph six of the Trust provided that "no advisor shall have any power or authority under any circumstance to act in a non-fiduciary capacity."

With McDonald and Hasken as the only two trust advisors, on August 21, 2014, McDonald informed Hasken he was eliminating her position as an officer of AYM. Hasken responded by writing the other board members and requesting a special meeting to consider what she believed was improper action by McDonald and the executive committee. A board meeting occurred in September 2014 where McDonald and the board of directors removed Hasken as vice president of AYM. She again wrote the board of directors and warned them "that [her] purported termination as an officer of the company is a continuation of the efforts of the Executive Committee to subvert the authority of the Board of Directors and to marginalize the duly elected directors of the company." In her letter were "other examples of the Executive Committee's improper actions." McDonald then called for Hasken's resignation. She refused to resign. At a special meeting of the board in December 2014, Hasken was removed as a director on the board. At the advice of counsel, she did not attend the meeting and as a trust advisor did not vote her

---

[3] AYM terminated Hasken's employment at the company effective September 12, 2014, and then the board removed her as vice president and corporate secretary of AYM on September 18 by special meeting. She was then removed as a director of AYM at a special meeting held in December 2014.

625 voting shares on the topic of her removal. Then, in March 2015, at the annual meeting to vote on a proposed slate of directors that now included Ebling as a director, Hasken attended but "withheld" her vote.[4] After the meeting, Ebling's counsel emailed Hasken requesting she resign as trust advisor and appoint Ebling as her successor. Hasken refused. This suit followed.

**Proceedings.** Litigation commenced in April 2015, when the trust beneficiaries petitioned to remove Hasken as a trust advisor citing her conflict of interest in failing to vote her shares or seek a proxy to vote on proposals to remove her as trust advisor and appoint a new slate of board members. They also alleged other claims of dereliction of duty that are not before us. After Hasken answered by a full denial, the trust beneficiaries moved for summary judgment on the conflict issue. As stated in the history, the district court at first agreed with the trust beneficiaries and removed Hasken as a trust advisor, but a panel of this court reversed that ruling and remanded for further proceedings. *See Ebling*, 2017 WL 6034124, at *4-5. After that appeal, in cross-motions for summary judgment filed in fall of 2018, the trust beneficiaries and Hasken sought to resolve the conflict issue involving Hasken's role as trust advisor in their respective favor. Citing unresolved fact issues, the district court summarily denied both motions in January 2019. The parties then filed a joint statement of undisputed material facts and proceeded to trial.

In May 2019, the district court found:

Hasken did not have a conflict of interest with regard to the vote on December 1, 2014. And even if she did, that conflict was created by and anticipated by the trust in putting her in the position of director,

---

[4] The Appointment of Proxy allowed three voting options: "yes," "no," or "withheld."

employee, and Trust Advisor. Her refusal to vote her shares, on the issue of her own removal as a director, was not fraudulent, dishonest, an abuse of discretion, or done in bad faith. As such, the request to remove . . . Hasken as a Trust Advisor is denied. Costs are assessed to the [trust beneficiaries].

The trust beneficiaries appeal this ruling.

**Standard of review and Choice of Law.**

Because this case was filed in equity, we will apply a de novo standard of review. This means that the district court's findings of fact are not binding, but we will "give deference to those findings because the district court had the opportunity to assess the credibility of the witnesses." *Hensler v. City of Davenport*, 790 N.W.2d 569, 578 (Iowa 2010). "[W]e view the record in the light most favorable to the nonmoving party and allow that party all reasonable inferences that can be drawn from the record." *Wernimont v. Wernimont*, 686 N.W.2d 186, 189 (Iowa 2004).

The parties agree, and we previously applied, Illinois law as the law of the case. *See Ebling*, 2017 WL 6034124, at *3-4. Thus, the law of Illinois controls the interpretation of the meaning and effect of the Trust.

**Analysis.**

The trust beneficiaries narrow their appeal to whether Hasken breached a fiduciary duty to the trust beneficiaries as the trust advisor and whether the district court's refusal to remove Hasken in her trust advisor role for a conflict of interest was correct. These points reference Hasken's failure to vote her 625 shares at the December 2014 shareholder meeting when the issue of her removal as a director was before the board. Hasken urges affirmance of the district court ruling that found she had no conflict of interest when she exercised caution to avoid the

appearance of a conflict by choosing not to vote. She maintains that the district court correctly found she should not be removed as a trust advisor.

While the words "breach of fiduciary duty" are used to suggest that Hasken "breached her fiduciary duty by acting for the benefit of herself rather than the beneficiaries," the pleadings remained framed as a conflict-of-interest argument.[5] In that first appeal denying summary judgment, we alerted the parties that on remand the issue to determine was whether "Hasken's choice to take no action with the shares was against the interests of the beneficiaries." *Ebling*, 2017 WL 6034124, at *5. After providing this direction to the parties, we have no further information or argument that supports a finding that Hasken's choice to take no action with the shares was against the interests of the beneficiaries so that removal under Illinois law was required.

To arrive at this conclusion, we start with a review of Illinois law. The court has "inherent power" "to remove a trustee for breach of trust, misconduct or disregard of fiduciary duties." *Altschuler v. Chi. City Bank & Tr. Co.*, 43 N.E.2d 673, 676 (Ill. 1942), *rev'd in part on other grounds by Yedor v. Chi. City Bank & Tr. Co.*, 44 N.E.2d 604, 606 (Ill. 1942). The remedy for a failure to perform a duty by the trustee is removal and appointment of another trustee. *Id.* But, under Illinois law, the case law modifies these rules if the settlor intended to have trustees who are officers or employees of the business because the settlor values the trustees' familiarity with the business. Then, the law recognizes there is now an inherent

---

[5] In our earlier decision, we found that the trust beneficiaries did not plead an action for breach of fiduciary duty but were asking for removal of a trust advisor. *See Ebling*, 2017 WL 6034124 at *4.

conflict of interest that is sanctioned. *Tankersley v. Albright*, 374 F. Supp. 538, 543 (N.D. Ill. 1974), *rev'd on other grounds*, 514 F.2d 956 (7th Cir. 1975). Under the modified rule, the review of the trustee's conflict of interest is whether the trustee's action involves fraud, bad faith, dishonesty, or an abuse of discretion. *Id.* We agree with the district court that this higher standard applies. The district court reasoned "[h]ere, Hasken and the other Trust Advisor were *clearly* people who were officers, employees, and active members of the company." (Emphasis added.)

A review of the Trust terms also requires this finding. Describing the trust advisor duties, paragraph six of the Trust noted the potential dual roles of such advisor:

> Nothing in this paragraph 6 shall be construed as imposing on any Advisor at any time acting hereunder any other or additional obligations or liabilities with respect to *his actions or non-actions* as a *director, officer, employee or stockholder of A. Y. McDONALD MFG. CO.,* or any successor organization thereto, than he would have were he not named as Advisor under this paragraph 6; nor shall any such Advisor be disqualified from receiving compensation as *an officer, employee or advisor of said Company*, nor from purchasing or selling stock in said Company to the same extent as if he were not an Advisor hereunder.

(Emphasis added). Clearly, the settlor contemplated that his trust advisor might serve a role in the company along with the advisor role.

> It is well established that a trustee may occupy conflicting positions in handling the trust where the trust instrument contemplates, creates, or sanctions the conflict of interest. The creator of the trust can waive the rule of undivided loyalty by expressly conferring upon the trustee the power to act in a dual capacity, or he can waive the rule by implication where he knowingly places the trustee in a position which might conflict with the interest of the beneficiaries.

*Dick v. Peoples Mid-Ill. Corp.*, 609 N.E.2d 997, 1002 (Ill. App. Ct. 1993). When the trust settlor knowingly constructs a structure where the trust operation requires a trustees to act under a dual role—for example, as trustee and as a company employee—by implication the settlor waives the potential conflict. *In re Estate of Halas*, 568 N.E.2d 170, 177-78 (Ill. App. Ct. 1991). The comment of the court in *Conant v. Lansden*, 94 N.E.2d 594, 601 (Ill. App. Ct. 1950), *aff'd in part, reversed in part on other grounds*, 98 N.E.2d 773 (Ill. 1951), summarizes the Illinois policy relevant to our review:

> It is a common situation, for a testator who owns what he deems a good business, to include it in a trust and to appoint as one of the trustees, an officer or employee who is familiar with the business. His reasons are [too] patent to require comment. [The testator] chose among his trustees, two men who had been officers of the company since it was originally incorporated. It would be a strange rule of law to hold that the trustees were guilty of bad faith, self-dealing, or other improper conduct if they failed to resign their corporate positions, and thus discontinue the very reason for their selection.

We find the same situation before us. Thus, applying the more rigorous standard makes sense. And in a previous case, the Illinois courts confirmed that removal of a trustee is an extreme remedy. *See Laubner v. JP Morgan Chase Bank, N.A.*, 898 N.E.2d 744, 467 (Ill. App. Ct. 2008). "Not every instance of mistake or neglect on the trustee's part requires the removal of the trustee." *Id.* "The court should remove a trustee only if the trustee endangers the trust fund and removal is clearly necessary to save the trust." *Id.*

Under the guidance of these principles, we apply the facts developed in this record. The parties jointly stipulated to several key facts, three of which we find particularly persuasive:

41. Plaintiff, Eelen Ebling, admits that Hasken could have voted her shares in any way that she thought best and upheld her fiduciary duty. Plaintiff, Eelen Ebling, admitted that Hasken could have withheld her vote under Box 3 of the Proxy Statement.

42. Plaintiff, Eelen Ebling, admitted that there were more than 60% of the shares necessary to constitute a quorum at the December 1 meeting.

43. Plaintiff, Eelen Ebling, admitted that the Trust suffered no harm and was not put at risk by Hasken's choice not to vote the Trust Shares at the company meetings.

On this second trip to our court, the record provides no evidence of harm, neglect, or danger to the trust fund caused by Hasken. Likewise, no proof of fraud, bad faith, dishonesty, or an abuse of discretion was presented. So on our quest for factual support for removal under the more rigorous trustee standard, we find only the protestations of the trust beneficiaries that they and the other directors voted overwhelmingly to remove Hasken and thus her choice to not vote her shares was "against the wishes of the beneficiaries." A trustee disagreement with a beneficiary does not constitute a conflict of interest. "Personal hostility between a trustee and a beneficiary is not a *per se* ground for removal of the trustee." *Id.*

And the Trust provided the trust advisors discretion to act for the Trust. Hasken believed her removal as a director was not in the best interest of the company or the trust beneficiaries,[6] and even Ebling agreed Hasken could have come forward and appropriately voted "yes," "no," or "vote withheld" and upheld her fiduciary duty. The objection appears to be simply that she did not vote. And the Trust provided, by its terms, that it did not impose "on any Advisor at any time acting hereunder any other or additional obligations or liabilities with respect to his

---

[6] Hasken cited her internal knowledge and business expertise about the company and her awareness and reporting of what she considered unauthorized actions by the executive committee as reasons her service was beneficial to the Trust.

actions or *non-actions* as a director, officer, employee or stockholder of A. Y. McDONALD MFG. CO.*"* (Emphasis added.) At trial, McDonald testified:

> Q. Okay. But you'll agree with me, sir, that in the trust document itself, there is nothing that says a person has an obligation to vote the shares, is there? A. No, there isn't, but in a family business, I think it's—there's a certain way you should do things if—when you're operating a family business.

He also conceded that the failure to vote did not impact the Trust. Ebling also testified about the requirement to vote as follows

> Q. Okay. And I'll ask you the same question I asked Mr. McDonald. Is there anything in the language of the trust instrument, which is Exhibit 11, your father's trust, that obligates the Trust Advisor to vote the shares? A. No, there isn't. They are not obligated.

Hasken followed this testimony and answered the same question

> Q. In fact, what's your understanding of what Exhibit 11 says about your obligation? A. That I have the right to vote the shares, but I do not have the obligation.

And while Hasken did not vote her trust advisor voting shares at the December 2014 meeting, nothing she did or did not do prevented the board from acting, as they still had a quorum and the board still removed Hasken as a director on the board. Trust beneficiaries identified no harm to them by Hasken's failure to vote her shares as trust advisor.

With all of those factors in mind, a court should not interfere with a trustee's exercise of discretion given to him or her by the trust instrument so long as the trustee does not act in a wholly unreasonable and arbitrary manner. *Laubner,* 898 N.E.2d at 751. Using the more rigorous standard, the district court found trust beneficiaries did not prove that Hasken's vote—whether exercised or not—

amounted to fraud, dishonesty, or abuse of discretion; or was done in bad faith; or that she had a conflict of interest that required her removal. We agree.

**AFFIRMED.**