**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240200-U

Order filed March 12, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| RAYMOND S. MAKOWSKI, JAIMIE A. MAKOWSKI, COURTNEY T. MAKOWSKI, and CHRISTOPHER R.E. MAKOWSKI, | ) ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | |
| RICHARD G. MAKOWSKI, Individually and as Trustee of the Geraldine M. Makowski Trust, MICHELLE FROLA, NICOLE FROLA, and INSTITUTE OF THE BLESSED VIRGIN MARY (LORETTO SISTERS), | ) ) ) ) ) ) ) | Appeal No. 3-24-0200 Circuit No. 19-CH-0500 |
| Defendants | ) ) | |
| (Richard G. Makowski, Individually and as Trustee of the Geraldine M. Makowski Trust, Appellant). | ) ) ) | Honorable John C. Anderson, Judge, Presiding. |

_____

PRESIDING JUSTICE BRENNAN delivered the judgment of the court.
Justices Davenport and Bertani concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   The trial court did not err in granting partial summary judgment on three counts of plaintiffs' complaint and removing defendant as Trustee of the Trust. Affirmed and remanded.

¶ 2     Defendant, Richard G. Makowski, individually and as Trustee of the Geraldine M. Makowski Trust dated August 10, 1988, as amended and restated March 13, 1996 (Trust), appeals from the trial court's order granting partial summary judgment in favor of plaintiffs, Raymond S. Makowski, Jaimie A. Makowski, Courtney T. Makowski, and Christopher R.E. Makowski (beneficiaries of the Trust), on their complaint for declaratory relief, breach of fiduciary duty, and request for removal of Richard as Trustee of the Trust. Both Richard and Raymond are Geraldine's sons; Jaimie, Courtney, and Christopher are Geraldine's grandchildren. For the reasons set forth below, we affirm and remand the cause for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4     Richard and Geraldine became co-trustees of the Trust in March 1996. On April 5, 2003, Richard executed a "Care Agreement" pursuant to which Richard moved into Geraldine's home in Bolingbrook and was compensated for his care of Geraldine and services rendered for Geraldine's benefit, including her daily living activities and health care. Geraldine passed away in December 2014, at which point Richard became the sole Trustee of the Trust. This case involves Richard's alleged breach of fiduciary duty with respect to his claims against the Trust and his alleged failure to distribute the Trust assets in accordance with the terms of the Trust. We recount the relevant portions of the Trust, the procedural history, and the trial court's rulings.

¶ 5                                        A. Trust

¶ 6     Article I of the Trust included provisions regarding the Trust income and principal during Geraldine's lifetime. Namely, section 1.01 provided that, "[d]uring my lifetime, the Trustee shall

pay to me, or pursuant to my direction, all of the income from the Trust Estate." Section 1.02 provided that, "[d]uring my lifetime, the Trustee shall pay to, or apply for the benefit of, me or any person or entity designated by me, so much or all of the Trust Estate as I, at any time and from time to time, may direct" and "is authorized to pay to me, or apply for my benefit, so much or all of the Trust estate as the Trustee, in his sole discretion, deems necessary or desirable for my maintenance, support, health, general welfare and comfortable living." Section 2.02 of Article II included a provision for the payment of expenses, stating in relevant part that, "[t]o the extent the Trustee is required to do so by law or requested to do so by the executor of my Will pursuant to the authority granted under my will, the Trustee shall pay from the principal of the Family Trust my funeral expenses, the costs of administration of my estate, including ancillary, my debts that have not been barred by laches, limitations or otherwise, other proper charges against my estate ***" and that, "[t]he Trustee may make payment directly or to the legal representative of my estate, as the Trustee in his sole discretion deems necessary or desirable ***."

¶ 7      Article III of the Trust included the following provisions with respect to the distribution of the Trust:

"3.01 Specific Distributions. Upon my death, the trustee shall make the following distributions:

(A) The sum of $40,000.00 to my son, **RAYMOND**, if he is then living, or if not, to his descendants, per stirpes. If there is written evidence that I have paid this sum to him, during my lifetime, this gift is cancelled.

***

***

3

(D) If any one or more of my five diamond rings and my grandmother's earrings become part of the trust assets, they shall be divided among my then living grandchildren, as they agree, when the youngest attains age 18. If they cannot agree, the division shall be made by the Trustee.

3.02 <u>Distribution of Family Trust</u>. Subject to Section 3.01 hereunder, the Trustee shall divide the remainder of the Family Trust into separate shares of equal value, creating one such share for **RAYMOND** and one such share for **RICHARD**, such shares to be distributed outright and free of trust to **RAYMOND** and/or **RICHARD** \*\*\*."

¶ 8    Article V of the Trust set forth administrative provisions, including section 5.05, which provided that "[n]o Trustee shall be required to obtain the order or approval of any court in the exercise of any power or discretion," and section 5.08, which provided that "[a]ny Trustee shall receive reasonable compensation for services rendered as such Trustee." Section 6.08 of Article VI addressed "Duality of Position," stating,

"I am aware that any Trustee at any time acting hereunder may also be acting as an Executor of my Will or as a trustee of another trust created by me. Notwithstanding the possible existence of such duality of position, such Trustee shall be fully authorized to deal with himself in each such capacity in the same manner as through there were no such duality, without any restriction that may be imposed by law or by any court order without any liability to anyone by reason of so dealing. Without limiting the generality of the foregoing, I hereby waive the appointment of any guardian ad litem or special administrator whose appointment might otherwise be required in connection, with the final account of the Executor, or any other manner, by reason of the possible dual position of such Trustee."

4

¶ 9 Article VII, section 7.01, vested various powers in the Trustee, including in relevant part: (A) "[t]o retain, without liability for loss or depreciation resulting from such retention, any property including, but not limited to, residential property, received upon creation of a trust or any property or any property that may from time to time be added to a trust, or any property in which the trust funds may from time to time be invested, for such time as to the Trustee shall deem best ***"; (E) "[t]o execute, acknowledge and deliver any contract, *** or other instrument in writing ***"; (H) "[t]o adjust, contest, arbitrate, compromise, abandon, collect, pay, sue on or defend, and otherwise deal with claims in favor or against a trust as the Trustee shall deem best ***"; (I) "to employ and compensate agents, brokers, attorneys, accountants and assistants *** deemed by the Trustee to be necessary or desirable for the administration of a trust"; (K) "[t]o pay all costs, taxes, expenses and charges in connection with the administration of a trust ***'"; (M) "[t]o be reimbursed for all reasonable expenses, including attorneys' fees, incurred in the management and protection of a trust"; (O) "[t]o enter into any transaction authorized hereunder with trustees, executors or administrators of other trusts or estates in which any beneficiary of a trust has any interest, even though any such trustee or representative is also Trustee under this instrument ***"; and (P) "[t]o do any and every act and thing, and to enter into and carry out any and every agreement in respect to all or any part of the property, real or personal, at any time forming a part of a trust as he would have the right to do and in the same manner as if he were the sole owner thereof."

¶ 10 B. Procedural History

5

¶ 11        Plaintiffs initiated this action on March 28, 2019, with a four-count complaint against Richard individually and as the Trustee of the Trust.[1] Count I sought declaratory relief regarding, *inter alia*, Richard's alleged breach of fiduciary duty. Count II alleged that Richard breached his fiduciary duty as Trustee by, *inter alia*: (1) failing and refusing to distribute the Trust estate for in excess of five years following Geraldine's death and failing to compensate the Trust for his use and occupancy of the Bolingbrook residence; (2) asserting claims against the estate and refusing to distribute assets unless the Trust beneficiaries approved his accountings, acknowledged his claims, and released their interest in the Trust; and (3) asserting personal claims against the Trust for his fees and services under the Care Agreement, which he alone signed individually and on behalf of the Trust, without first seeking direction from the court.

¶ 12        Count III sought an accounting of Richard's financial actions as Trustee. And count IV sought removal of Richard as Trustee and the appointment of a successor trustee in accordance with the Trust terms for purposes of selling the Bolingbrook home (where Richard continued to reside rent-free) and distributing the Trust assets. Raymond sought payment of the specific bequest of $40,000 made to him under section 3.01(A), as well as his one-half distributive share of the remainder of the Trust, as stated in section 3.02. Jaimie, Courtney, and Christopher sought the distribution of jewelry, diamond rings, and earrings made to them under section 3.01(D). All plaintiffs sought the distribution of personal property.

¶ 13        Discovery ensued. The record includes an accounting, dated March 28, 2016, that Richard issued for the Trust for the time period from December 17, 2014, through December 31, 2015. The disbursements included payments related to the Bolingbrook residence, and the

---

[1] Plaintiffs also named Michelle Frola, Nicole Frola, and Institute of the Blessed Virgin Mary as defendants, but these defendants waived and disclaimed any interest in the Trust and did not participate in the underlying litigation.

inventory included the Bolingbrook residence, brokerage and other accounts, an automobile, and jewelry, with a stated value of $574,111 for the total inventory. The accounting stated that "[t]here are current and future claims against the Trust which must be paid before any distribution to beneficiaries" and that Richard has claims for debts against the Trust in excess of $1.18 million. With respect to the Bolingbrook residence (valued at $225,000), the accounting stated that the home needs interior improvements and that "the real estate market in the surrounding area is depressed and stagnant with lengthy time on market ***."

¶ 14    The record also includes an accounting, dated February 24, 2023, that Richard issued for the Trust for the time period from January 1, 2022, through December 31, 2022. The disbursements included payments related to the Bolingbrook residence (valued at $225,000), and the inventory included the Bolingbrook residence, brokerage and other accounts, and jewelry, with a stated value of $524,344 for the total inventory. The accounting stated that Richard's claims continue to exceed the total value of the Trust. Richard's claims (and amended claims) include: (1) a claim for $944,170 in pre-death fees for caregiving, nursing, and other administration, (2) a statutory custodial and/or hardship claim for in excess of $180,000 for lost employment and lifestyle opportunities and emotional distress as a result of personally caring for a person with a disability, and (3) a claim for $56,520 in post-death fees for time spent on administrative matters and home improvement.

¶ 15    On August 30, 2023, pursuant to the trial court's order to produce an updated inventory of Trust assets, on August 30, 2023, Richard filed an interim inventory (as of June 30, 2021) with a stated value of $582,137. The interim inventory included the Bolingbrook residence (valued at $225,000), various shares of stock, a retirement account, cash, an automobile, and jewelry.

¶ 16    Following the close of discovery, on August 30, 2023, plaintiffs filed a motion for partial summary judgment as to liability on counts I, II, and IV of the complaint, asserting that Richard breached his fiduciary duties by failing to administer the Trust in accordance with its terms. Plaintiffs argued that it was undisputed that Richard had failed to distribute the Trust assets for in excess of eight years following Geraldine's death and refused to distribute the assets unless the beneficiaries of the Trust approved his accountings, acknowledged his claims, and released their interests in the Trust. To date, Richard still lived in the Bolingbrook residence rent-free while using Trust assets to pay the taxes, utilities, and maintenance. Moreover, plaintiffs argued that Richard's personal claims against the Trust for his fees and services under the Caretaker Agreement demonstrated that he operated under a conflict of interest.

¶ 17    Richard filed a response in opposition to summary judgment with a supporting affidavit. Richard attested that, from April 5, 2003, until Geraldine's death, he cared for, managed, and assisted Geraldine with her health care and daily living needs. During the last five years of her life, Geraldine needed constant assistance with daily life activities, including "eating, walking, driving, bathing, toileting, etc." Richard further attested that, in accordance with section 1.02 of the Trust, he applied the Trust's assets for Geraldine's maintenance, support, health, general welfare, and comfortable living. In addition, "[s]ince its inception in 1988, [the Trust] paid all expenses for utilities, food, clothing, traveling, maintenance, and other expenses for Geraldine and hired caregivers, medical providers, repairment, advisors, contractors, and the like." According to the affidavit, Geraldine primarily managed the Trust from its inception in 1988 through approximately 2006, at which point Richard began to assist Geraldine in managing the Trust and its associated finances and maintaining and repairing the home. After Geraldine passed away in December 2014, Richard became the sole Trustee of the Trust.

¶ 18     Citing the trust provisions set forth above, Richard argued that his failure to distribute the Trust assets was not a breach of fiduciary duty because the claims against the Trust exceeded $1.1 million and the Trust assets were valued at only $582,137 as of June 30, 2021. Specifically, section 2.02 required Richard, as Trustee, to pay, *inter alia*, the "debts and other proper charges," which includes claims against the Trust.

¶ 19                                    C. Trial Court's Ruling

¶ 20     Following briefing, on January 22, 2024, the trial court entered an order granting summary judgment in plaintiffs' favor on counts I, II, and IV "for the reasons advanced by Plaintiffs" and expressly "adopt[ed] Plaintiff's assertions." The trial court also removed Richard as Trustee, effective February 13, 2024, continued the case to that date, and ordered the parties to confer as to whether they could agree on a successor trustee. However, on February 9, 2024, Richard filed a motion (and an amended motion) under section 2-1203 of the Code of Civil Procedure (735 ILCS 5/2-1203 (West 2022)) for rehearing, modification, or reconsideration of the trial court's January 22, 2024, order (motion to reconsider). On this same date, Richard also filed a motion to stay the order and a motion for a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason for delaying appeal of the order. Thereafter, the trial court stayed its January 22, 2024, order until further order of the court.

¶ 21     Following briefing and argument, on March 14, 2024, the trial court entered an order denying Richard's motion to reconsider as well as his motions for a Rule 304(a) finding and for a stay. The trial court also continued the matter to March 18, 2024, for case management and appointment of a successor trustee. On March 15, 2024, Richard filed a notice of appeal from the trial court's January 22, 2024, and March 14, 2024, orders pursuant to Illinois Supreme Court Rule 304(b)(1) (eff. Mar. 18, 2016) ("[a] judgment or order entered in the administration of an

9

estate, guardianship, or similar proceeding which finally determines a right or status of a party" is appealable without a Rule 304(a) finding). Thereafter, on March 18, 2024, the trial court entered an order, "clarif[ying] that the bases for the 3-14-24 order mirror the arguments made by plaintiffs relative to those contested issues; the court adopts plaintiffs' rationale." The trial court also appointed Marquette Bank as an "institutional successor trustee if it chooses to accept the appointment," continued the matter for an April 15, 2024, status hearing, and ordered the parties to notify the court at the status hearing as to whether Marquette Bank accepted the appointment. However, the trial court stayed its order until March 28, 2024, to allow Richard the opportunity to seek emergency relief in the appellate court. On March 26, 2024, Richard filed an amended notice of appeal, adding the March 18, 2024, order to the orders being appealed.

¶ 22       In this court, Richard filed an emergency motion to stay the order appointing a successor trustee as well as a subsequent motion to stay the order, both of which this court denied. In addition, plaintiffs filed a motion to dismiss the appeal for lack of jurisdiction, which this court denied.

¶ 23                                             II. ANALYSIS

¶ 24       On appeal, Richard challenges the grant of partial summary judgment in plaintiffs' favor and his removal as Trustee. Initially, however, we note that plaintiffs reiterate their argument that this court lacks jurisdiction over Richard's appeal. We disagree. This court has jurisdiction pursuant to Rule 304(b)(1) ("[a] judgment or order entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party" is appealable without a Rule 304(a) finding). Ill. S. Ct. R. 304(b)(1) (eff. Mar. 8, 2016); *In re Estate of Lee*, 2017 IL App (3d) 150651, ¶¶ 23-24 (Rule 304(b)(1) allowed jurisdiction to review, *inter alia*, the trial court's order to provide a trust accounting and a trust distribution); *In*

10

*re Estate of Russell*, 372 Ill. App. 3d 591, 593 (2007) (Rule 304(b)(1) allowed jurisdiction to review orders in a proceeding relating to the administration of a trust). We therefore turn to the merits of Richard's appeal.

¶ 25    Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). In determining whether there is a genuine issue of material fact, the pleadings, depositions, admissions, and affidavits must be construed strictly against the movant and liberally in favor of the opponent. *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 162 (2007). A triable issue of fact exists where the material facts are disputed or where, although the material facts are undisputed, reasonable minds might draw different inferences from those facts. *Id.* at 162-63. We review summary judgment rulings *de novo. Id.* at 163. Resolution of the arguments on appeal also necessitates interpretation of the Trust language; we likewise review issues of trust interpretation *de novo. Hill v. Brinkman*, 2023 IL App (3d) 220394, ¶ 16. We review a trial court's decision to remove a trustee for an abuse of discretion. *Durdle v. Durdle*, 141 Ill. App. 3d 12, 15 (1986).

¶ 26    Richard argues that partial summary judgment in plaintiffs' favor was unwarranted because the evidence established that he did not violate his fiduciary duties as Trustee. According to Richard, he properly managed and deployed Trust assets in accordance with the Trust provisions and did not abuse his powers or his discretion in managing the Trust. Richard also argues that the terms of the Trust explicitly and implicitly allow him to pursue the claims against the Trust and continue as Trustee. We disagree, as set forth below.

11

¶ 27    It is well established that a trustee owes a fiduciary duty to a trust's beneficiaries. *Hill*, 2023 IL App (3d) 220394, ¶ 17. As such, a trustee must administer the trust property in accordance with the terms of the trust instrument. See *In re Estate of Adames*, 2020 IL App (1st) 190573, ¶ 59 (quoting *In re Hartzell's Will*, 43 Ill. App. 2d 118, 134 (1963)) ("Generally, 'the powers and duties of a trustee must be determined by the instrument creating the trust, and, by accepting the trust, the trustee becomes bound to administer it, or execute it, in accordance with the provisions of the trust instrument.' "). Section 801 of the Trust Code (760 ILCS 3/801 (West 2022))[2] provides that "the trustee shall administer the trust in good faith, in accordance with its purposes and the terms of the trust, and in accordance with this Code." The "trustee shall administer the trust as a prudent person would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution." *Id.* § 804. Further, "[u]pon the occurrence of an event terminating a trust in whole or in part ***, the trustee shall proceed expeditiously to make the distribution to the beneficiary. ***." *Id.* § 817; see *Breen v. Breen*, 411 Ill. 206, 212 (1952) (the failure of the trustee to act in a reasonable time allows the beneficiaries the right to petition the court for action or a new trustee); *Heritage County Bank & Trust Co. v. State Bank of Hammond*, 198 Ill. App. 3d 1092, 1097 (1990) ("The trustee should perform these duties within a reasonable time."). Failure to distribute a trust's assets in accordance with the terms of the trust amounts to a breach of fiduciary duty. See *Gearhart v. Gearhart*, 2020 IL App (1st) 190042, ¶¶ 129, 144-145.

---

[2] The Illinois Trust Code (Code) (760 ILCS 3/101 *et seq.* (West 2022)), which the parties cite, became effective on January 1, 2020, replacing in relevant part the previous Trusts and Trustees Act (760 ILCS 5/1 *et seq.* (West 2018)).

¶ 28    Article III of the Trust unambiguously provides that, upon Geraldine's death, the Trustee "shall make the following distributions," including the sum of $40,000 to Raymond and jewelry to Jaimie, Courtney, and Christopher, as required by section 3.01, and the distribution of the remainder of the Trust in equal shares to Raymond and Richard, as required by section 3.02. Geraldine passed away in 2014; Richard, as Trustee, has made none of the required Trust distributions. Further, Richard has not sold the Bolingbrook residence and continues to live there rent-free, while using Trust assets to pay the taxes, utilities, and maintenance. Richard does not dispute these central facts; rather, Richard maintains that, in granting summary judgment and removing him as trustee, the trial court failed to address what he characterizes as the fundamental issue—"whether a Trustee violates his fiduciary duty when he does not distribute Trust Assets when the debts and claims have not been resolved and they exceed the value of the Trust assets."

¶ 29    Richard cites section 2.02 of the Trust, requiring him to pay the "debts and other proper charges" of the Trust, which he argues include his claims against the Trust. According to Richard, his failure to distribute the Trust assets was not a breach of fiduciary duty because his claims against the Trust far exceeded the value of the Trust assets.

¶ 30    Richard cites numerous cases to support his argument that the existence of his claims against the Trust excused his failure to distribute the Trust assets. See, *e.g.*, *Lewis v. Sedgwick*, 223 Ill. 213, 222 (1906) (noting that, if the value of the estate is less than anticipated, "general legacies or residuary funds must first be abated before any abatement of the specific legacies could be required," in addressing the timing of when the value of a widow's share of a will should be computed); *In re Estate of Enright*, 106 Ill. App. 3d 914, 915-16 (1982) (addressing whether income produced during the period of probate from property of the estate could be used to satisfy the debts and claims of the estate). However, while a trustee is required to take

13

reasonable steps to enforce claims of the trust and to defend claims against the trust (see 760 ILCS 3/811 (West 2022)), Richard's argument in this regard ignores that he is seeking to enforce his very own personal claims against the Trust. While not every claim by a trustee against a Trust presents a conflict of interest, *e.g.*, administration fees, here, Richard's claims, which Richard relies on as the basis for failure to distribute the Trust assets in all the years since Geraldine's death, far exceed the value of the Trust and are disputed by the other beneficiaries.

¶ 31　　　　Nonetheless, Richard maintains that plaintiffs failed to meet the standard for his removal as Trustee. "[N]ot every instance of mistake or neglect on the trustee's part justifies removal of the trustee; only if the trustee endangers the trust fund and removal is clearly necessary to save the trust should a court remove a trustee." *Durdle*, 141 Ill. App. 3d at 15. A trustee must not act in a wholly unreasonable and arbitrary manner. *Laubner v. JP Morgan Chase Bank, N.A.*, 386 Ill. App. 3d 457, 464 (2008) (citing *Chicago Title & Trust Co. v. Chief Wash Co.,* 368 Ill. 146, 155 (1938)). According to Richard, the facts do not reflect that he endangered Trust assets but rather, that he "preserved the Trust assets until a court could determine whether the claims were valid" and that his removal as Trustee was thus unwarranted.

¶ 32　　　　In keeping with a trustee's fiduciary duty to a trust's beneficiaries, "a trustee is obligated to carry out the trust according to its terms; to act with the highest degree of fidelity and good faith; to serve the interests of the beneficiaries with complete loyalty, excluding all self-interest; and to refrain from dealing with the trust property for his own individual benefit." *Hill*, 2023 IL App (3d) 220394, ¶ 17. Accordingly, a trustee may not place himself in a position where his interests conflict with the interests of the trust beneficiaries. *Faville v. Burns*, 2011 IL App (1st) 110335, ¶ 41. Richard acknowledges that his claims against the Trust predating Geraldine's death exceed the Trust's value and include $944,170 in pre-death fees for caregiving, nursing,

14

and other administration and a statutory claim for in excess of $180,000 for lost employment and lifestyle opportunities and emotional distress as a result of personally caring for Geraldine. To the extent these claims might otherwise constitute a conflict of interest, he argues they do not warrant his removal as trustee here because the trust document contemplates, creates, or permits a trustee's conflict of interest. See *Hill*, 2023 IL App (3d) 220394, ¶ 17.

¶ 33     The settlor of a trust may waive the trustee's duty of undivided loyalty "(1) expressly, by specifically conferring upon the trustee the power to act in a dual capacity, or (2) by implication, by knowingly placing the trustee in a position that might conflict with the interests of the beneficiaries." *Id.* When a trust document creates or permits a trustee's conflict of interest, "the burden of proof remains on the party challenging the trustee's conduct since there is no presumption against the trustee despite the trustee's divided loyalty." *Id.*

¶ 34     Applying the rules of trust interpretation, we consider whether, as Richard contends, the Trust authorizes him to pursue the claims. So long as it is not against public policy, a trust will be interpreted to effectuate the settlor's intention. *Id.* ¶ 18. The intention is derived from the trust document as a whole, rather than from isolated phrases, clauses, or sentences. *Id.* Richard relies on the "Duality of Position" provision in section 6.08 of article VI, which provides that the "Trustee at any time acting hereunder may also be acting as an Executor of my Will or as a trustee of another trust created by me" and that, "[n]otwithstanding the possible existence of such duality of position, such Trustee shall be fully authorized to deal with himself in each such capacity in the same manner as through there were no such duality, without any restriction that may be imposed by law or by any court order without any liability to anyone by reason of so dealing." While the Trust certainly authorizes duality of position, we observe that no language in

section 6.08 otherwise supports Richard's argument that the Trust language authorizes him to pursue his particular claims against the Trust here while also continuing to function as Trustee.

¶ 35    Richard cites *In re Estate of Hawley*, 183 Ill. App. 3d 107 (1989), to support his argument. However, there, the court simply interpreted a trust provision similar to section 6.08 to hold that the defendant's roles as both the trustee and executor of the grantor's will did not create a conflict. *Id.* at 109. Indeed, the court explicitly noted that the provision did *not* permit the conflict of interest created when the defendant leased trust property to his son. *Id.* Richard also cites *Dick v. Peoples Mid-Illinois Corp.*, 242 Ill. App. 3d 297, 305-06 (1993), but that case is inapposite, as it involved the interpretation of a will provision that expressly allowed the challenged conduct. Richard further maintains that the Trust also *implicitly* exempted him from the conflict of interest and cites the various fiduciary powers enumerated in section 7.01 of article VII. However, Richard presents no meaningful discussion of the provisions, and our review of section 7.01 does not support Richard's unsupported implicit exemption argument.

¶ 36    In concluding, we observe that a trustee has a duty to deal impartially with all beneficiaries of the trust and to protect their interests. *Northern Trust Co. v. Heuer*, 202 Ill. App. 3d 1066, 1070 (1990). Thus, absent terms within the trust document providing otherwise, a trustee's fiduciary duty precludes it from favoring one beneficiary over another. *Id.* Here, Richard's intent to satisfy his own disputed claims to the exclusion of the other beneficiaries is potentially at odds with his fiduciary obligations. Accordingly, the trial court did not err in granting partial summary judgment in plaintiffs' favor on counts I, II, and IV and did not abuse its discretion in removing Richard as Trustee.[3]

---

[3] We further note that both parties agreed at oral argument that affirmance of the trial court's order would not resolve the merits of Richard's claims against the Trust and that those claims have not been adjudicated and will be resolved on remand.

¶ 37                                    III. CONCLUSION

¶ 38          The judgment of the circuit court of Will County is affirmed, and the cause is remanded

for further proceedings.

¶ 39          Affirmed and remanded.